George McLean's Case.

Suffolk.     April 6, 1948. — June 7, 1948.

Present: Qua, C.J., Dolan, Ronan, Wilkins, & Spalding, JJ.

*Workmen's Compensation Act*, Injuries to which act applies; Procedure: exceptions, appeal, requests for rulings.  *Proximate Cause.  Error*, Whether error harmful.

Evidence, at the hearing of a claim under the workmen's compensation act by one employed as a night operator of a taxicab, that the cab was found late at night parked with its motor and meter running and with the employee, severely wounded in the head, lying unconscious "partly in and out of the right door," warranted findings that the employee had been assaulted by a passenger while operating the cab in the course of his employment, and that his injury arose out of his employment even though the motive for the assault was not shown.

A final decree in a workmen's compensation case should not be reversed for error by the Industrial Accident Board in the admission of irrelevant evidence where such evidence did not form the basis of the board's decision and its admission therefore could not have harmed the appellant.

Even if the Industrial Accident Board in a workmen's compensation case were required to deal with requests for rulings to the effect that the claimant had the burden of proving the facts essential to support his claim and that they must be proved by a preponderance of the evidence and not left a matter of conjecture, a refusal of the board to deal with such requests was not reversible error where it appeared from the record that in making its decision the board recognized the principles set out in the requests.

Certification to the Superior Court of a decision by the Industrial Accident Board in a workmen's compensation case.

The insurer appealed from a final decree entered by order of *Broadhurst*, J.

*E. Field*, (*C. C. McCarthy* with him,) for the insurer.

*L. E. Weafer*, (*J. E. Keefe, Jr.*, with him,) for the claimant.

Spalding, J. Early in the morning of May 5, 1945, the employee, a taxi driver, was severely injured as a result of an atrocious assault committed upon him. The principal question for decision is whether the evidence warranted a finding that his injury arose out of and in the course of his employment.

The following is a summary of the pertinent evidence. The employee worked on the night shift which commenced at 4:30 P.M. and ended at 3 A.M. He usually brought his cab back at the regular time but if he did not "there was no penalty put on him" by his employer and nothing was said to him. In May, 1945, gasoline rationing was in effect and a driver "could drive one hundred miles from the time he left for work until he got back." On the afternoon of May 4, 1945, the employee left his home for work at approximately 4:45 P.M. Between eleven and twelve o'clock he visited a Miss O'Hanley at her home in Jamaica Plain. At two o'clock in the morning of May 5 he left, telling Miss O'Hanley that he had "got to get going and get some business." He was next seen in these circumstances: At about 4:15 A.M. a telephone message was received at police headquarters from a resident of Windsor Street, Roxbury, to the effect that there was a "commotion" in a taxicab at Windsor and Westminster streets, and two police officers were immediately sent there in an automobile. Arriving at Windsor Street at about 4:20, they found the cab which the employee had been driving parked near the curb with the motor and meter running. The employee was lying unconscious "with body partly in and out of the right door of the cab, his head resting on the other side, and covered with blood." Brain tissue protruded from a perforation over his right ear. Blood and particles of brain tissue were observed on the front seat of the cab. A medical examination of the employee at the hospital to which he was taken revealed that he had sustained multiple compound fractures of the skull and lacerations of the scalp and brain. There was no partition between the front and rear seats of the cab. The injuries sustained by the employee were consistent with his having been struck from behind. A broken

handle of a hammer was found "inside of the back of the cab." Subsequently the head of a hammer covered with blood was found in the possession of a small boy in the neighborhood. The head and the broken handle fitted together. The hammer was of a type used for knocking dents out of mudguards. Two wallets and cash in the amount of $36.60 were found on the employee. Although the motor of the cab was still running when the officers arrived on the scene, they did not shut it off because they did not want to touch any part of the cab until finger prints had been taken. At 4:30 the meter registered $1.80. When the motor was shut off at about five o'clock the meter registered between $2 and $3. The employee, who has been in a hospital ever since he was injured and is still totally incapacitated for work, has never been able to give an account of what happened to him. Despite an extensive investigation by the police the identity of the employee's assailant has never been discovered.

The single member of the Industrial Accident Board found that the employee failed to prove that his injuries arose out of and in the course of his employment, and denied his claim for compensation. The reviewing board, upon the evidence heard by the single member, reversed his findings and decision, and on findings of its own decided in favor of the employee. From a decree of the Superior Court ordering payments in accordance with the board's decision, the insurer appealed. The findings and decision of the reviewing board, which superseded the action taken by the single member (*Di Clavio's Case*, 293 Mass. 259, 261), must stand unless they are unsupported by the evidence, including all rational inferences that the testimony permitted. The essential facts need not necessarily be proved by direct evidence but may be established by reasonable inferences drawn from facts shown to exist. *Sawyer's Case*, 315 Mass. 75, 76. *Gianfriddo's Case*, 319 Mass. 566, 567.

1. Although to a considerable extent the events from which the employee's injuries resulted are shrouded in mystery, we think enough appears to warrant the findings made

by the board.[1] It could have been found that the employee at the time he was injured was driving his cab in the course of his employment. From the facts that when the police arrived on the scene the motor of the cab was running and the meter was in operation, it was not unreasonable to infer that shortly before he was assaulted he had had a passenger in the cab. From the location of the wounds on the employee's head and the fact that the handle of the hammer was found in the back part of the cab, it could also have been inferred that he was assaulted by someone seated in the rear of the cab.

A question of more difficulty is whether the employee's injury was one arising out of his employment. We are of opinion that it was permissible for the board to find that it was. It is true that the employee might have been exposed to a similar risk if he had not been driving the taxi. But that is not the question. The question is whether his employment brought him in contact with the risk that in fact caused his injuries. *Caswell's Case*, 305 Mass. 500. *Souza's Case*, 316 Mass. 332, 334. The employee's work required him to operate his cab at a late hour of the night and to transport without discrimination those who sought transportation. See *Guinevan* v. *Checker Taxi Co.* 289 Mass. 295, 297. We cannot say that the board erred in finding, as in effect it did, that one of the risks involved in the employment was that of assault by a passenger and that there was a greater likelihood that the employee's injuries resulted from such an assault than from one which was not connected with his employment. See *Gargano* v. *Essex County News Co.* 129 N. J. L. 369; *Hartford Accident & Indemnity Co.* v. *Hoage*, 85 Fed. (2d) 417 (C. A. D. C.); *Casualty Reciprocal Exchange* v. *Johnson*, 148 Fed. (2d) 228 (C. C. A. 5). See annotations in 72 A. L. R. 110, 114–116, and 112 A. L. R. 1258, 1262–1265.

---

[1] These findings included the following: "We find and infer from the evidence . . . that the employee was assaulted about the head, by means of a hammer wielded by a passenger or passengers for hire, or a person or persons presumed by him to be such, while in the course of his employment, that he was subject to such risk of assault in all of the circumstances and that his injury also arose out of his employment."

The insurer argues that an assault committed with such extreme atrocity, coupled with the fact that some $36 was found on the employee, renders robbery as a motive for it highly improbable and rather indicates "a brutal malevolence actuated by personal animosity." But the employee's case does not stand or fall on establishing robbery as a motive. If robbery was not the motive, it would not necessarily follow that the assault did not arise out of the employment. The board rightly ruled, therefore, that proof of motive was not required. We do not interpret this as a ruling that motive is never material in a case of this sort and that the employee could recover for an assault actuated by motives entirely personal in their nature and having no relation to the employment. It amounted to no more than a ruling that in the circumstances obtaining here, where the evidence pointed in the direction of an assault by a passenger, proof of motive was not necessary.

2. The insurer argues that there was prejudicial error in the admission of certain evidence. Subject to the insurer's exceptions the single member admitted evidence through police officers and the employee's employer of other hold-ups and robberies of taxi drivers in the city of Boston. These exceptions were renewed before the reviewing board. See *Di Clavio's Case*, 293 Mass. 259, 261. As tending to prove that the assault on the employee arose from a robbery, this evidence of course would not have been competent. But it is apparent that the board did not base its decision on the fact that the employee had been robbed; it ruled, as stated above, that proof of motive for the assault was not required. It is difficult therefore to see how this evidence could have harmed the insurer. Moreover the evidence added little, if anything, to what the board knew as a matter of common knowledge. "Independently of G. L. (Ter. Ed.) c. 231, § 132, but in accordance with general equity practice, a decree in a workmen's compensation case will not be reversed for error in the admission or exclusion of evidence, unless substantial justice requires reversal." *Indrisano's Case*, 307 Mass. 520, 523. No substantial rights of the insurer were affected by the admission of this evidence.

3. The insurer presented to the reviewing board eight requests for rulings of law.[1] In refusing to consider them the board said, "We are of opinion that sufficient findings of fact have been made herein as well as citations of authority to show the view of the law applicable to the facts of this case which we have taken." It is now settled that, while a reviewing board may make rulings of law material to its decision, it is not ordinarily required to do so, for the reason that the purpose of such rulings in most instances is served by the subsidiary findings that the board is required to make. *Belezarian's Case,* 307 Mass. 557, 559–561. *Roney's Case,* 316 Mass. 732, 736. In *Belezarian's Case* it was said that this rule "may not apply to requests for rulings that deal with the technic of finding the facts, such as the burden of proof" (page 561). See *West's Case,* 313 Mass. 146, 155–156. Assuming that under this exception the insurer was entitled to have the board deal with requests numbered 1, 2, and 3, we think that the failure of the board to do so was not reversible error in the circumstances. The decision of the board clearly indicates that it recognized that the employee had the burden of proof with respect to the essential issues of the case. The decision, which contains detailed findings of facts and an extended discussion of the legal principles involved, also convinces us that the board did not labor under the misapprehension that its finding could be based on speculation or conjecture. The

---

[1] "1. The claimant has the burden of proving every issue essential to an award and compensation. 2. A claimant in a workmen's compensation case can no more prevail if factors necessary to support his claim are left to surmise, conjecture, guess or speculation than can a plaintiff in an ordinary action in tort or contract. A sure foundation must be laid by a preponderance of evidence in support of his claim before he can succeed. . . . 3. The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency or there can be no recovery. . . . 4. There is no evidence to warrant a finding that the employee's injury arose out of and in the course of his employment. . . . 5. There is no evidence that the motive for the assault upon the employee was connected in any way with his employment. 6. There is no evidence to warrant a reasonable inference as to what occasioned the assault upon the employee. 7. A felonious assault upon an employee by an unknown person is not to be anticipated as a natural risk of employment. 8. An employee's injury is not compensable unless it has its origin in a risk connected with his employment and flows from that source as a natural consequence."

principle [1] that a finding for an employee in a compensation case cannot rest on mere conjecture is so well established and so elementary that it is not to be presumed that it was ignored by the board in arriving at its decision.  The decision we think also discloses that the board recognized that, under the principle laid down in *Madden's Case,* 222 Mass. 487, 495, the personal injury must result from a "proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." The other requests need not be considered.  They do not fall within the exception to the general rule stated above; consequently the board was not required to deal with them. See *Chapman's Case,* 321 Mass. 705, 711.

*Decree affirmed.*

---

[1] See *Sponatski's Case,* 220 Mass. 526, 528;  *Sanderson's Case,* 224 Mass. 558, 561;  *Dube's Case,* 226 Mass. 591, 594–595;  *McMahon's Case,* 236 Mass. 473;  *MacDonald's Case,* 277 Mass. 418, 421.  The decision of *Murphy* v. *Boston & Maine Railroad,* 319 Mass. 413, is not inconsistent with this principle.