STANLEY PALTSIOS'S CASE.

Suffolk.    October 9, 1952. — December 2, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Incapacity, Lump sum settlement.

Evidence in a proceeding under the workmen's compensation act respecting a young man who at sixteen years of age had lost his right hand through an injury occurring while he was at work and who had thereafter graduated from high school and attended a business college warranted a finding by the Industrial Accident Board that he was totally disabled from the injury and would "continue so to be" for the rest of his life and justified a lump sum award to him under § 48 of the act based on the present value of the total and permanent disability compensation to which he would have been entitled under § 34A, as amended, during his life expectancy.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Goldberg*, J.

*Charles T. Sexton*, for the insurer.

*John H. Morris*, for the claimant.

RONAN, J.    The employee, a high school student, was injured on September 22, 1945, when he was sixteen years of age while working in a store when his right hand became caught in a meat grinder, resulting in the amputation of the hand.    The case was here before on the question of double compensation.    *Paltsios's Case*, 325 Mass. 356.    It is here now on an appeal by the insurer from a decree ordering the insurer to pay a lump sum award of $13,575.21 less a small deduction.

The employee sought a lump sum settlement under G. L. (Ter. Ed.) c. 152, § 48, which reads in part, "The department, in the case of a minor who has received permanently disabling injuries, either partial or total, may, at any time before or after he attains his majority, provide that he be

compensated in whole or in part by the payment of a lump
sum, of an amount to be fixed by the department, not ex-
ceeding the amount provided by this chapter." The board
in reckoning the lump sum considered the case as coming
within § 34A of the act, as then amended by St. 1943,
c. 276, which provided for the payment of compensation
"during the continuance of such total and permanent dis-
ability."

There was evidence as follows. The employee was a
part time clerk when he was injured but he did not intend
to pursue that occupation. He could wait on customers now
but he could not cut meat. He has a prosthesis which he
does not use much and another artificial hand for dress pur-
poses. Both are uncomfortable. He had taken commercial
courses in high school but he did not care for the courses at
the commercial college which he has attended, and he in-
tends to go to another school. He can write with his left
hand and is able to typewrite with his left hand. Since the
date of his injury the employee has not done any work. He
registered for work in 1943 with the employment security
division of the Commonwealth but he has had no offers for
work. Since his injury he has been attending school, gradu-
ating from the local high school and attending until June,
1950, a business college in Boston. He intends to go to the
Bridgewater Teachers' College, but his plans for the future
are indefinite and he might go into business. The gist of the
medical testimony is that the employee could do the work
which a man who has lost his right hand can do if he could
acquire skill in the use of the prosthesis and that would de-
pend upon his willingness to use it but he has largely dis-
carded the use of it; that he does not have to use it in going
to school and has not acquired enough practice in using it.
The use of the artificial hand has caused a slight infection
in the arm.

The board found that, "in view of . . . [the employee's]
present age, appearance, experience, training, natural capa-
bilities, ambition to work prior to injury, lack of employ-
ment since then and attitude for the kind of work for which

he has sought scholastic and academic training," he is now totally disabled as a result of the injury and that "he will continue so to be for the rest of his natural life," which according to the mortality tables is 40.85 years; that during that period he would be entitled to total disability compensation at $11 a week; and that the present value of such compensation less a discount of 3% amounts to $13,575.21, subject only to a deduction of $11 for each weekly compensation paid since August 17, 1951, the twenty-second birthday of the employee.

The employee doubtless has sustained a permanent injury which will certainly interfere with the performance of the daily functions of life, depending to a considerable degree upon the nature of the occupation in which he is engaged or the profession which he has adopted as the means of a livelihood. No one at this point can predict with any degree of certainty what his life work will be. The evidence on this aspect of the case was properly described by the board as nebulous. It is true that he has not performed any work since the injury, but that might well be ascribed to the fact that he was attending school. Of course, the insurer cannot complain of reasonable efforts made in good faith by the employee to better his future position in life.

The question is whether the evidence will support a finding that the employee for the next forty years, the estimated span of his life, will be permanently and totally incapacitated or, in other words, that he will suffer such a disability as will prevent him from performing remunerative work of a substantial character within the ability to perform by one of his age, experience, training, and capacity.

It is settled that the findings of a reviewing board are to be sustained whenever possible, and they are not to be reversed unless they are lacking in evidential support or are tainted by an error of law. Findings may properly be based upon the evidence together with all the rational inferences which may be drawn therefrom. *Mandell's Case,* 322 Mass. 328. *McLean's Case,* 323 Mass. 35, 37. *Karelis's Case,* 328 Mass. 224. It was said in *Hummer's Case,* 317

Mass. 617, 623, "The fact that a man has lost his right hand warrants a conclusion that he is prevented from performing many types of work. . . . But whether the loss of a hand results in any particular case in total and permanent disability is usually a question of fact." To the same effect are *Frennier's Case*, 318 Mass. 635, *Amello's Case*, 320 Mass. 347, and *Gramolini's Case*, 328 Mass. 86. All of these cases involved the extent of disability and its duration where the injury consisted in the loss of a part of a hand and not, as here, a claim for a lump sum settlement. The nature of the inquiry by the board is the same whether for compensation or a lump sum. An award for weekly compensation for permanent and total disability can be changed from time to time to correspond to the changes in the earning capacity of the employee, but the award of a lump sum settlement, when made without error of law, cannot be set aside by an insurer who thinks it excessive or by an employee who believes it too low. *McCarthy's Case*, 226 Mass. 444. The determination of a lump sum calls for a careful scrutiny of the evidence, the exercise of sound judgment and good practical sense, so that the amount will be as near as possible to the present value of all the compensation payments which the employee would be entitled to receive in the future. *Moran's Case*, 230 Mass. 500. *Joos's Case*, 267 Mass. 322. *Akins's Case*, 302 Mass. 562. We cannot say that the award was not supported by the evidence.

We do not agree with the further contention of the insurer that it did not understand that the hearing at which its counsel participated related to a lump sum settlement.

It follows that the decree of the Superior Court is affirmed. Costs under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, as amended by St. 1949, c. 372, shall be allowed by the single justice.

*So ordered.*