## DONALD P. COTTER'S CASE.

Suffolk.   May 4, 1955. — July 1, 1955.

Present: QUA, C.J., WILKINS, SPALDING, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Right to compensation, Incapacity. *Words*, "Probably."

Findings by the Industrial Accident Board in a workmen's compensation case, that through an injury to his thumb the employee became unable to do the work of a first class mechanic which he had been doing before the injury and that, although he was paid the same wages as before the injury upon returning to work for the same employer at various jobs for about two months, whereupon he voluntarily quit, thereafter he was unable to earn the same wages and was partially incapacitated because of such inability to do a first class mechanic's work, entitled him to partial incapacity compensation from the time of quitting notwithstanding further findings by the board that he could "probably" have stayed with his former employer at the same wages and that he "failed to act fairly and reasonably" in voluntarily quitting.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act denying a claim for further compensation from August 10, 1953.

The claimant appealed from a decree entered by order of *Pecce*, J., in accordance with the board's decision.

*Louis M. Gropman*, for the claimant.

*George J. Ferguson, Jr.*, for the insurer.

COUNIHAN, J.   This is an appeal from a decree of the Superior Court denying the employee's claim for further compensation under G. L. (Ter. Ed.) c. 152, §§ 35 and 35A,

as amended. The reviewing board adopted and affirmed the findings and decision of the single member, whose findings may be summarized as follows: On May 6, 1953, the claimant, who was employed as a sheet metal mechanic by the insured, caught his left thumb in a "press brake." He was incapacitated for work until June 9, 1953, and during that period he received total compensation benefits. On June 9, 1953, he returned to work for the insured and was paid $133 a week which was the same as he had been receiving at the time he sustained injury. He was unable to do the work of a first class mechanic which he was doing prior to the accident. He continued in the employ of the insured until August 10, 1953, doing various jobs. On that day he voluntarily quit. Since then he has been unable to earn the same wages because he has been unable to do the work of a first class mechanic. Thereafter he filed a claim for compensation for partial disability.

After hearing the single member found that "this employee, as a result of the injury sustained by him on May 6, 1953, is still partially incapacitated for the type of work he was able to perform and did perform prior to and including the date of injury to his left thumb; and that such partial incapacity has existed from June 9, 1953, to the date of this decision." He further found that "this employee is not entitled to receive partial incapacity compensation benefits which may be due to him from August 10, 1953, to the date of this decision, as a result of the diminution in earning capacity suffered by him as a consequence of the injury of May 6, 1953," for the following reasons, "That this employee by voluntarily terminating his services with the employer . . . failed to act fairly and reasonably, and showed a complete disregard for his own personal welfare and the welfare of those dependent upon him; that he displayed no appreciation for the consideration extended him by the employer between June 9, 1953, and August 10, 1953, during which period the employer furnished him with work he was capable of performing and at wages comparable to those received prior to and up to the date of injury, and that in

accordance with the testimony of the employee, 'According to anything the company said to him he could have stayed there doing the same type of mechanical work at the same average weekly wage *probably*' " (emphasis supplied).

"It is settled that the findings of a reviewing board are to be sustained whenever possible, and they are not to be reversed unless they are lacking in evidential support or are tainted by an error of law." *Paltsios's Case*, 329 Mass. 526, 528.

We are of opinion that the reasons assigned by the single member for denying partial compensation, which were adopted and affirmed by the reviewing board, were tainted by error of law. It was said in *Slavinsky* v. *National Bottling Torah Co.* 267 Mass. 319, at page 321, "The workmen's compensation act 'is to be interpreted in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design.' *Young* v. *Duncan*, 218 Mass. 346, 349."

The single member specifically found that this employee, as a result of the injury sustained on May 6, 1953, is still partially incapacitated for the type of work he formerly performed, and "that such partial incapacity has existed from June 9, 1953, to the date of this decision." In *Zeigale's Case*, 325 Mass. 128, at pages 129–130, we said, " 'Incapacity for work resulting from the injury' is the statutory basis upon which a claim must be based for total, permanent and total, or partial disability. . . . Compensation is awarded not for the injury as such but rather for an impairment of earning capacity caused by the injury. An injury to be compensable must be one which lessens the employee's ability to work." See *Federico's Case*, 283 Mass. 430, 432.

The insurer contends that one of the reasons assigned by the single member, that the employee by voluntarily terminating his services failed to act fairly and reasonably, warranted the denial of the employee's claim for partial compensation. We do not agree.

The single member also specifically found that the employee testified that he could have stayed on with the in-

Lobster Pot of Lowell, Inc. *v.* Lowell.

sured at the same pay he was previously receiving, "probably." The lexical meaning of the word "probably" is "in all likelihood." We believe that from the use of the word "probably" by the employee it could be inferred that he entertained reasonable apprehension that he might be laid off. "In any event, we cannot say as matter of law that the circumstances of his changing jobs prevented a finding of partial incapacity. Such a ruling would mean that an employee, injured in circumstances otherwise entitling him to compensation, must, under penalty of losing that right, forego employment elsewhere and remain with an employer and engage in a lighter type of work for at least as long as he receives wages at a rate not lower than before his injury, notwithstanding his reasonable apprehension that he might be laid off." *Bajdek's Case*, 321 Mass. 325, 329.

The decree must therefore be reversed and the case remanded to the Industrial Accident Board for a determination, upon the evidence already heard, of the amount of partial compensation due the employee.

*So ordered.*