428 P.2d 943

Mae WOODALL, Claimant-Appellant,

v.

IDAHO POTATO PROCESSORS, INC., and
the Travelers Indemnity Company,
Defendants-Respondents.

No. 9872.

Supreme Court of Idaho.

June 16, 1967.

Kales E. Lowe, Burley, and Weldon S. Wood, Boise, for appellant.

Moffatt, Thomas, Barrett & Blanton, Boise, for respondents.

TAYLOR, Chief Justice.

Claimant (appellant) filed her petition November 15, 1963, under the provisions of the occupational disease compensation

law, claiming entitlement to total and permanent disability benefits. She alleged the disability occurred August 16, 1962, while she was in the employ of defendant (respondent) Idaho Potato Processors, Inc. She was employed by defendant at its plant in Burley, commencing September 13, 1960, specking potatoes at the trim table.

At the end of each work week it was customary to have two or three of the workers clean the working area and the steel cutters used in the plant. In this operation the steel cutters were taken apart and dipped in solutions containing an acid detergent. The first time claimant was assigned to the clean-up detail she did not use the acid detergent and the second time for only about half an hour. On January 8, 1961, on the occasion of her third clean-up duty she used the acid from 10:30 a. m. to 4:00 p. m., during which time she began to feel a burning sensation in her hands. That evening a red spot appeared on one hand; the next morning the redness had spread over the back of the hand. Her supervisor advised her to see a doctor, which she did on January 10, 1961, by which time the malady had spread to both hands. The doctor diagnosed the condition as "allergic type rash" attributable to "washing compound at plant." [I.C. § 72–1204(9)].

January 11, 1961, claimant gave formal notice of her injury. In her claim for compensation, filed January 16, 1961, she described the accident as "washing shaker, burned right arm with acid water." Since appellant at that time did not contend that she had lost any work time, the case was deemed settled on March 10, 1961, when the defendant insurance company paid her doctor and drug bills. The medication prescribed did not prove entirely satisfactory. Claimant saw her doctor again on January 17, 1961, at which time additional medication was prescribed and the doctor gave her a written statement to the effect that she should not continue to work where lye or strong detergent solutions were used. Upon presentation of this statement claimant's

employer transferred her to the packaging department where she remained and worked until December 1, 1961, during which time her hands apparently healed. Claimant testified that about the first of December (1961) her employer required her to work at the trim table; that when she did so her rash again appeared. When she refused to go to the trim table she was sent home until needed in the packaging department, where her employment continued intermittently until August 15, 1962, at which time her employment was terminated by the employer.

Sometime prior to November, 1962, appellant obtained employment at another potato processing plant operated by Eastern Idaho Packing Corporation. There too she experienced recurrences of the dermatitis when assigned to certain tasks. She visited her doctor again on November 3, 1962, at which time the doctor recommended that she stay away from aggravating chemicals. This she was unable to do. During her last week of employment, August 26 to 30, 1963, she suffered her most severe exacerbation while spray painting. There is no evidence that she had previously done spray painting in either employment.

Claimant contends that since she first suffered dermatitis in the employ of the defendant she has become allergic to various household detergents and sprays, which had never caused her any difficulty prior to that time. Since September, 1963, treatment has been successful to the extent that the condition does not become so serious nor prolonged upon contact with an offending substance, as it did before that time.

At the time of termination of her employment by defendant claimant contended that wages for thirty days of that employment had not been paid to her. April 23, 1963, she wrote defendant again asserting her claim for such past-due wages. No settlement of that claim was made by the employer, and on November 15, 1963, she filed with the industrial accident board her claim for permanent disability benefits.

This claim was summarized by the board as follows:

"*Period of employment with Idaho Potato. Processors, Inc.*" October 13, 1960 to August 16, 1962.

"*First manifestation of disease:* While employed specking potatoes at trim table with no prior history of dermatitis, I got burned with acid January 8, 1961, while cleaning stainless steel cutters and had to cease work on that occasion January 24.

"*Last injurious exposure in employer's service:* In June, 1962. I ceased work on account of disease August 16, 1962.

"*Subsequent employment:* Intermittent employment with Eastern Idaho Packing Corporation at Heyburn, Idaho; 9–26–62 to 5–22–63; 8–28–63 to 9–1–63. In this employment, allergic to rubber gloves, sprout inhibitors, Wisk and paint.

"*Present allergens:* Strong detergents; rubber gloves, sprays, insecticides, perfumes, paint and any chemicals. Exhibit 2."

■■■■ In its rulings of law the board said:

"V * Claimant's contention herein is essentially that she is permanently disabled for work by allergic dermatitis first manifested in the employ of defendant upon hazardous exposure to an acid in her occupation. That subsequent exacerbations and manifestations of dermatitis upon hazardous re-exposures to the same or other chemicals or substances are merely evidence of the residual of the first manifestation.

"This theory does have some medical support in the record, particularly in the reports of Dr. Lloyd (Exhibit 6) and of Dr. Christensen (Exhibit 14).

"VI * Claimant's theory, however, is not tenable under the Idaho Occupational Disease Compensation Law. Therein it is the last hazardous exposure to an allergen and the last manifestation of contact dermatitis which fix liability not upon the first but upon the last employer.

."The statute provides: ·

"'Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease shall be liable therefor; * * * Sec. 72–1207, I.C.'

"VII * Defendants have pleaded in bar a limitation prescribed in I.C., Sec. 72–1209, which reads as follows:

"'An employer shall not be liable for any compensation for an occupational disease * * * unless disablement * * * results within * * * one year * * * after the last injurious exposure to such disease in such employment, * * *'

"Claimant's contention alleged in her petition is substantially that within the definition of I.C., Sec. 72–1205, she became actually and totally incapacitated, because of an occupational disease from performing her work in the last occupation in which she was injuri*osul* exposed to the hazards of such disease. She fixes the date of such total disability as August 16, 1962. That was the day following her last two days of work for Idaho Potato Processors, Inc. During those two days she was working in the packaging department, where she had no injurious exposure, nor did she then have any manifestation of dermatitis. Her last day of work in the preceding season was June 7, 1961. There is no showing in the record that she was then disabled, nor is there any showing as to when prior to the close of that season, if at all, she was last injuriously exposed. Within the definition of Sec. 72–1205, she did not become 'actually and totally incapacitated' until August 30, 1963, when she had her worst recurrence, and that was in the employ of another company and due to an exposure to a different type of allergen from that she had contacted in the employ of the defendant herein. That was more than a year after her last injurious exposure in the defendant's

employ and in fact more than a year after the termination of her employment with defendant. Her cause of action is barred by Sec. 72–1209, I.C.

"VIII * Claimant's case herein is based solely on her alleged total and permanent disability.

"Claimant was not at any time material herein and is not now totally disabled for other types of work where she is not exposed to her known allergens. She demonstrated that fact in the packaging department of Idaho Potato Processors, Inc., and to some extent in her work for Eastern Idaho Packing Corporation. After she quit the employ of the latter she drew unemployment insurance benefits, a prerequisite eligibility for which is ability to work."

Frisk v. Garrett Freightlines, 76 Idaho 27, 276 P.2d 964 (1954). The findings and rulings of the board are supported by the evidence and are conclusive here.

█ Appellant's claim was also barred by I.C. § 72–1228, which bars a claim for occupational disease compensation after one year from the disablement.

█ Claimant urges that defendants have waived the bar of the statute by inequitable conduct, admission of liability, or failure to raise the defense promptly. It is claimed that defendants knew claimant had contracted dermatitis and that it had not been cured. Defendants knew of claimant's dermatitis, but the record does not show that they knew she suffered any permanent disability therefrom, nor that it had not been cured. Knowledge of a disability would not be sufficient to constitute an admission of liability therefor, nor a waiver of a defense thereto. There was no conduct on the part of the employer or surety which would have tended to induce a belief in claimant that her claim was recognized and would be taken care of without the filing of a claim, or which would tend to induce her to postpone such action. There was no conduct in this case comparable to that of the employer and surety in Harris v. Bech-

tel Corporation, 74 Idaho 308, 261 P.2d 818 (1953), where it was held sufficient to estop the employer and surety from asserting the bar of the statute. In her letter to the employer dated April 27, 1963, she made no claim or assertion of disability, temporary or permanent. Claimant cites two letters written by the surety, one dated January 7, 1964, and the other January 15, 1964. In both, permanent disability and liability were denied, and both were written after appellant's claim had been filed, so that neither could be relied upon as an inducement to delay the filing of the claim, or as a waiver of the bar of the statute.

█ Sometime in October, 1964, after claimant had filed her claim, and after defendants had filed their answer denying liability, she was examined by Dr. Lloyd at defendants' request. However, this was not done for the purpose of treatment and no treatment was tendered or promised. Such examination by defendants' physician obviously could not have induced any delay in the filing of plaintiff's claim, since that had already been filed; nor would it warrant a conclusion that further treatment was promised or that the bar of the statute was waived.

"A mere examination by an insurance carrier to ascertain the condition of an injured employee solely for the purpose of determining the existence, nature and extent of disability is not a medical treatment. Such an examination standing alone is no indication the carrier has undertaken the obligation to make compensation and to assume his medical care. Garden Farm Dairy v. Dorchak, 102 Colo. 36, 76 P.2d 743 (Sup.Ct.1938) ; Hunt v. Industrial Accident Commission, 43 Cal. App. 373, 185 P. 215 (1st App.Dist.1918)." Sampson v. Thornton, 8 N.J. 415, 420, 86 A.2d 117, 119 (1952).

█ Claimant's petition for hearing was filed May 22, 1964. Defendants' answer alleging the defense of limitation was not filed until September 23, 1964, and after the board had fixed an original hearing date. However, some delay was occasion-

ed by the illness of claimant's counsel, and the hearing was not had until August 11, 1965. The board regarded the answer as "essentially a motion to dismiss in reliance upon the statute of limitations." However, the board ruled that:

"When limitations is urged by one party the board deems that the opposing party is entitled to present facts at a hearing tending to show waiving or tolling of the statute of limitations."

Such a showing, claimant did not make, nor did she make any showing of prejudice. The late filing of the answer in itself did not constitute a waiver. Harris v. Industrial Accident Commission, 204 Cal. 432, 268 P. 902 (1928); Dye v. Ed Johnston Grain Company, Okl., 319 P.2d 1004 (1957); Atkins v. Colonial Baking Company, Okl., 287 P.2d 450 (1955).

The order of the board is affirmed.

SMITH, McQUADE, McFADDEN and SPEAR, JJ., concur.