457 P.2d 400

Jean Marie MAYO, Claimant-Respondent,

v.

SAFEWAY STORES, INC., and State Insurance Fund, Defendants-Appellants.

Jean Marie MAYO, Claimant-Appellant,

v.

SAFEWAY STORES, INC., and State Insurance Fund, Defendants-Respondents.

Nos. 10307, 10308.

Supreme Court of Idaho.

July 18, 1969.

Rehearing Denied Aug. 18, 1969.

Coughlan, Imhoff, Christensen & Lynch, Boise, for employer and surety.

Thomas A. Mitchell, Coeur d'Alene, for claimant-respondent.

McFADDEN, Chief Justice.

By order of the court these two appeals were submitted on the same transcript, and were argued before the court at the same time.

### No. 10307

Issues presented by the appeal of the employer, Safeway Stores, Inc., and its surety, State Insurance Fund, will first be discussed.

Mr. Robert C. Mayo, an employee and manager of the Safeway store in Bonners Ferry, Idaho, on October 11, 1967 at about

10:30 a. m. was discovered dead, lying in a pool of blood in the walk-in freezer of the store. His death had been caused by blows on his head from a hammer, the property of the employer. Earlier that morning, Mr. Mayo had been seen by two employees at about 8:00 a. m. Mr. Mayo let one of the employees into the store, and also directed the activities of the other employee. A Mr. Schuon, an assistant manager of the store was also observed in the store about that time by the employees, and by a patron who discussed a matter of business with him while he was engaged in washing some mops in a sink.

At about 8:10 a. m. Mr. Schuon was observed leaving the store. His body was found later that afternoon near his home outside the City of Bonners Ferry.

A coroner's inquest was held to inquire into the death of Mr. Mayo and also the death of Mr. Schuon. The coroner's jury found that Mr. Schuon had committed suicide. The jury, inquiring into Mr. Mayo's death, determined his death was the result of a series of blows to the head, caused by the criminal acts of another, and that the person "probably causing the death was James Schuon."

Mrs. Mayo, the widow of the employee, filed her claim for death benefits, which claim was denied by the employer and surety. A hearing was held before one member of the Industrial Accident Board. Based on this record the full board awarded death benefits and attorney's fees to the claimant, Mrs. Mayo. It is from this award that the employer and surety appeal.

Testimony of various witnesses was presented to the board, as well as the transcript of proceedings and findings of the coroner's jury empanelled to inquire into the deaths of Mr. Mayo and Mr. Schuon.

The board found that Mr. Mayo was killed at about 8:00 a. m. on October 11, 1967, while at work, by criminal means as a result of blows to his head by a hammer, inflicted by the assistant manager Schuon. The board also found that the motives or reasons for the infliction of the hammer

blows by Schuon were unexplainable in that no personal or social or work connected difficulties were known to have occurred or existed between the two men. Based on the findings, the board held that the death was caused by an accident arising out of and in the course of Mayo's employment and awarded death benefits to his widow. Following another hearing the award was confirmed and $1,000 attorney's fees were awarded claimant.

The findings by the board are supported by substantial competent evidence and thus will not be disturbed on appeal. Woodall v. Idaho Potato Processors, Inc., 91 Idaho 626, 428 P.2d 943 (1967); Davis v. Schmidt Bros., Inc., 92 Idaho 312, 442 P.2d 448 (1968); McBride v. J. R. Simplot Co., 92 Idaho 274, 441 P.2d 723 (1968).

The employer and surety contend that there is no basis upon which to award death benefits in this case, asserting that there is nothing to establish that the assault upon Mr. Mayo occurred "in the course of" his employment, or that it "arose out of" the employment, and that the award should be reversed. I.C. § 72-201 requires that for an injury to an employee (from which death results) to be compensable, it must be "caused by an accident arising out of and in the course of any employment * * *." This court has held that an "accident" occurs "in the course of" employment when it occurs at the time and place where the employee is performing his tasks. Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712 (1947). See also Kiger v. Idaho Corp., 85 Idaho 424, 380 P.2d 208 (1963); Ensley v. Grace, 76 N.M. 691, 417 P.2d 885 (1966).

The record discloses that the assault took place on the employer's premises, during the normal working hours, and that a tool of the employer was involved. There is no evidence however as to whether Mr. Mayo was performing his assigned tasks or was in furtherance of his employer's business at the time.

Cases of this nature involving assaults upon employees have arisen in a number of

other jurisdictions, resulting in diverse results. Larson in his work on Workmen's Compensation (1 Larson, Workmen's Compensation Law, § 11.31, p. 184 (1968)) has analyzed these cases, and divides the assault cases into three classifications. First there are those assaults which are inherently related to the employment, such as assaults arising out of work disputes, and which generally result in award of compensation. Second, there are those assaults which are inherently personal or private in origin, which assaults arise from disputes imported by the employee from outside the sphere of employment, the only connection with the employment being the location at which the assault occurs. This class of assaults is generally considered as being noncompensable. The third classification by Larson is the "neutral" assaults, wherein the cause of the assault can neither be assigned to the employment nor to the personal disputes with the employee. Neutral assaults include assaults by lunatics and completely unexplained assaults. In dealing with this last classification of assaults the cases are in great conflict. Larson in his analysis of the cases states:

"The majority of jurisdictions are inclined to regard the neutral category as noncompensable, for want of affirmative proof of distinctive employment risk as the cause of the harm; but a growing minority, applying the positional or but-for test, make awards for such injuries when sustained in the course of employment." 1 Larson, Workmen's Compensation Law § 11.31, p. 184.

The appellants, citing a large number of cases from other jurisdictions, contend that unexplained assaults are not compensable for the reason that there is no affirmative proof of a causal connection between the assault and the employment. See Rocky Mountain Fuel Co. v. Kruzic, 94 Colo. 398, 30 P.2d 868 (1934); Francis v. Liberty Mutual Ins. Co., 95 Ga.App. 225, 97 S.E.2d 553 (1957); Stapleton v. Fork Junction Coal Co., 247 S.W.2d 372 (Ky.App. 1952); Hopson v. Hungerford Coal Co., 187 Va. 299, 46 S.E.2d 392 (1943); American

Brake Shoe Co. v. Industrial Commission, 20 Ill.2d 132, 169 N.E.2d 256 (1960).

Idaho has followed the growing minority of states that have adopted the positional risk rule, which awards compensation for injuries resulting from accidents which are of neutral origin in the sense that their origin is neither occupational nor personal. See 1 Larson, Workmen's Compensation Law, § 7.30, pp. 49–50. The case in which this position was first adopted is Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712 (1947), in which the claimant while at work was shot by an insane man suffering from a delusion that the claimant was a member of a group conspiring to kill him. The assault, as is generally the case with assaults by lunatics, was neutral in the sense that it was not causally connected to the employment or to the claimant personally. This court awarded compensation for the reason that

"It was his employment that placed him in the position and environment wherein he was assaulted and sustained the accidental injury. * * * There is nothing to show that the brandishing of the pistol and the firing thereof was a deliberate intention to injure appellant. The intention of the assailant from the record may have been limited to 'shooting up the place,' and that it was a random shot that struck appellant." 67 Idaho at 483, 185 P.2d at 720.

The rule in Louie v. Bamboo Gardens, supra, was solidified in Foust v. Birds Eye Division of General Foods Corp., 91 Idaho 418, 422 P.2d 616 (1967), which, although it was not a neutral risk case, held that when an injury occurs on the employer's premises, a presumption arises that the injury arose out of and in the course of employment. Foust v. Birds Eye, supra, and Louie v. Bamboo Gardens, supra, make it clear that Idaho has adopted the positional risk rule under which when a death or injury resulting from a completely unexplained assault occurs on the employer's premises, and in the course of employment, a rebuttable presumption arises that the in-

jury arose out of the employment and is compensable. The rationale for this rule is that when the cause of the injury can be attributed to neither an occupational nor personal origin, and is thus neutral, there is no more reason to assign the resulting loss to the employee than to the employer. Under such circumstances the scales are evenly balanced, and all that is needed to tip them in favor of compensability under the positional risk doctrine is that the employment brought the employee to the place of injury. See 1 Larson, Workmen's Compensation Law, § 12.14, pp. 192.15–192.16.

Several other jurisdictions have also followed the positional risk test in cases surprisingly similar to the case at bar. See Ensley v. Grace, 76 N.M. 691, 417 P.2d 885 (1966); McLean's Case, 323 Mass. 35, 80 N.E.2d 40 (1948); Valenti v. Valenti, 28 A.D.2d 572, 279 N.Y.S.2d 474 (1967); Travelers Ins. Co. v. Cardillo, 78 U.S.App. D.C. 255, 140 F.2d 10 (1943); Casualty Reciprocal Exchange v. Johnson, 148 F.2d 228 (5th Cir. 1945). And see London Guar. & Acc. Co. v. McCoy, 97 Colo. 13, 45 P.2d 900 (1935), casting doubt on the continued validity of Rocky Mountain Fuel Co. v. Kružic, supra, cited by appellants.

█ The appellants rely upon this court's decision in In re Malmquist, 78 Idaho 117, 300 P.2d 820 (1956), which held that the mere fact that an injury occurs on the employer's premises is not an exclusive test of compensability, but rather is only one factor to be considered. There is nothing in that case inconsistent with our decision here. We do not hold that the positional risk rule is the exclusive test of compensability, but only that when injury results from a neutral cause, a rebuttable presumption arises that the injury arose out of the employment. The burden is thus shifted to the employer to prove that the injury was caused by a factor personal to the employee. The cases of Duerock v. Acarregui, 87 Idaho 24, 390 P.2d 55 (1964), and Devlin v. Ennis, 77 Idaho 342, 292 P.2d 469 (1956), are pertinent here. In each case an employee was found dead on his employer's premises from an injury

caused by an unwitnessed and unexplained assault. Although these deaths would be presumed to be compensable under the positional risk rule, in each case the employer produced circumstancial evidence establishing a motive for the slaying personal to the employee, and accordingly it was properly held that the deaths were not compensable.

█ In the present case the appellants failed to prove that the assault was motivated by personal animosity between Mr. Mayo and Mr. Schuon. The appellants produced several witnesses who testified that they knew of no employment difficulties between the two men, but the respondent also produced witnesses who testified that there was no personal or social contact between the men and that they knew of no personal animosity. At the close of the evidence the reason for the assault was still unexplained. Although in a workmen's compensation case the burden is always upon the claimant to establish by a preponderance of the evidence that the injury arose out of and in the course of employment (Devlin v. Ennis, supra; Duerock v. Acarregui, supra; Louie v. Bamboo Gardens, supra), in a case like the present, the claimant is aided by a presumption of compensability which arises as a result of the positional risk rule. The appellants having failed to rebut the presumption, the death is compensable.

Wells v. Robinson Constr. Co., 52 Idaho 562, 16 P.2d 1059(1932), is contrary to our decision in the present case. There an employee was struck and killed by lightning while operating a plow for his employer. In reversing an award of compensation, this court held that the death did not arise out of the employment because of a lack of proof that the employment subjected the decedent to a distinct risk of lightning unique to the employment. Under the positional risk doctrine, this is not the test. Lightning is obviously a neutral cause of injury equally unconnected with either the employer or the employee personally, and consequently the fact that it was the employment which placed the employee in the

place where he received the injury would justify compensation. It is our opinion that Wells v. Robinson Constr. Co., supra, was impliedly overruled by Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712 (1947), and we specifically overrule it now.

## No. 10308

Issues raised by the appeal of the claimant, Jean Marie Mayo, will next be discussed, as well as the employer's and its surety's contention that the board erred in awarding claimant $1,000 attorney's fees.

Mrs. Mayo contends that the board erred in awarding her only $1,000 attorney's fees payable from the employer and its surety, when the board also approved the agreement she had entered into with her attorney as concerns attorney's fees. Under this agreement with her attorney, the attorney's fee would have been about $3,300.

The employer and its surety, however, contend that they acted upon reasonable grounds in denying the claim and that consequently the board erred in holding that they were "unreasonable in denying and refusing to pay the benefits to which claimant is entitled." The employer and its surety assert that since under I.C. § 72–611 attorney's fees may be awarded only when a claim is contested without reasonable grounds that there was no basis for the award of the $1,000 in attorney's fees against them.

The board stated in its award:

"Upon an examination of the cases of Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712; Devlin v. Ennis, 77 Idaho 342, 292 P.2d 469; Deurock [Duerock] v. Acarregui, 87 Idaho 24, 390 P.2d 55; and more recently, Foust v. Birdseye [Birds Eye] Division, General Foods Corp., et al., 91 Idaho 418, 422 P.2d 616; * * * in which the Court held that where the injury occurred on the premises and during the course of employment, it is presumed to arise out of the employment in the absence of positive evidence to the contrary, the Board con-cludes that the defendants, and particularly the State Insurance Fund, have been and were unreasonable in denying and refusing to pay the benefits to which claimant is entitled in this case."

In the board's order, issued following the hearing on petitions for review of the award, the board entered rather extensive findings of fact reviewing the evidence which the State Insurance Fund had available to it at the time it denied Mrs. Mayo's claim. This evidence was practically the same evidence submitted to the board, including all the testimony taken at the coroner's inquests. The board then concluded that the State Insurance Fund was unreasonable in not paying the award because it should have recognized that Idaho had joined the growing number of states applying the positional risk theory, which cloaks a claimant with a presumption which if unrefuted (as was the case here) entitles the claimant to recover.

Whether reasonable grounds exist or do not exist for contesting a claim is a determination first to be made by the board. Wilson v. Gardner Associated, Inc., 91 Idaho 496, 426 P.2d 567 (1967). The board in the instant case has made such a finding, and it is the conclusion of the court that it did not err in this regard. This portion of the award stands on a firm foundation in that the State Insurance Fund refused to recognize, after it had all the available facts, that under the so-called positional risk doctrine, recognized in Idaho, it had the duty to rebut the presumption afforded to claimant if it wished to deny liability. No facts were presented in rebuttal of this presumption, however, and presumably none were available and hence the board did not err in awarding attorney fees. I.C. § 72–611.

While the board approved the fee arrangement between claimant and her attorney (I.C. § 72–702), which, providing for a percentage of the ultimate award, would have established a fee due to claimant's attorney in an amount of approximately $3,-300, the board nevertheless awarded only $1,000 as fees payable from the surety.

The board had before it affidavits of various attorneys, to which were attached copies of the advisory fee schedule of the Idaho State Bar, which reflected that a reasonable attorney's fee in a case of this nature, and in conformity with the advisory fee schedule, would have been substantially more than the amount agreed upon by claimant and her counsel.

The board in ruling upon the question of the amount of attorney's fees to be charged against the employer, and ultimately the surety, stated

"An award of attorneys' fees by the Board pursuant to Idaho Code 72–611 is penal in nature and the amount thereof must be determined with reference not only to recompensing the claimant, but also with due regard to the punitive purpose of the statute."

It is the conclusion of the court that the board erred in its determination that an award of attorney fees is penal in nature. The whole philosophy of the Workmen's Compensation Law is one aimed to secure a "sure and certain relief for injured workmen and their families and dependents * * *." I.C. § 72–102. This court has repeatedly stated that this law is to be liberally construed with a view to effect its objects and promote justice. McNeil v. Panhandle Lbr. Co., 34 Idaho 773, 203 P. 1068 (1921); McCall v. Potlatch Forests, Inc., 67 Idaho 415, 182 P.2d 156 (1947); Rivera v. Johnston, 71 Idaho 70, 225 P.2d 858 (1950); Burch v. Potlatch Forests, Inc., 82 Idaho 323, 353 P.2d 1076 (1960). It is inconsistent for the board, finding that the surety was unreasonable in its denial of the claim, to approve as reasonable the agreement between claimant and her counsel regarding attorney's fees (I.C. § 72–702), and yet award a lesser amount as attorney's fees under I.C. § 72–611. In the situation in which an insurance company has unreasonably refused to recognize a claim, this court has authorized a reasonable attorney's fee and concluded that the attorney's fee was compensatory in nature. Halliday v. Farmers Insurance Exchange,

89 Idaho 293, 404 P.2d 634 (1965); see also Rungee v. Allied Van Lines, Inc., 92 Idaho 718, 449 P.2d 378 (1968). If the award of attorney fees in an insurance case is compensatory, certainly under the Workmen's Compensation Law, awards of attorney fees in a proper case must likewise be deemed as compensation to the injured employee or survivors, and not as a penalty.

The board having approved the contingent fee agreement between the claimant, Mrs. Mayo, and her attorney, which this court determines is reasonable, it was error for the board to award only $1,000 as attorney's fee on the theory that such fees are "penal" in nature. The order appealed from by the claimant is reversed, and the cause remanded for the board to enter an award of attorney's fees in conformity with the fee arrangement between the claimant and her attorney, i. e., for 20% of the award.

Claimant also filed with this court her motion for allowance of attorney fees on this appeal. It is determined that $750.00 is a reasonable fee to be allowed claimant therein.

The award of death benefits to the claimant is affirmed. The order of the board denying claimant's application for additional attorney fees is reversed and the cause remanded for entry of additional attorney's fees, and in addition thereto the board shall include in the allowance of attorney fees the sum of $750.00 for and as fees for claimant's attorney on this appeal. Costs to claimant, Jean Marie Mayo.

McQUADE, DONALDSON and SPEAR, JJ., concur.

SHEPARD, Justice (concurring).

I concur in the ultimate disposition of this case as announced by the majority opinion; that the award of death benefits by the Industrial Accident Board should be affirmed and that the denial of the petition for additional attorney's fees should be reversed and remanded. I disagree, however, with the reasoning and language used

by the majority opinion in arriving at their conclusion. I feel that the language of the majority opinion will tend to obscure and becloud an area of workmen's compensation law which, although it is minor in the number of cases arising therein, is nevertheless extremely important.

As pointed out in the majority opinion, the decedent husband of claimant was found dead on the premises where he was employed as the result of a completely unexplained and evidently unexplainable assault. The Industrial Accident Board found that the assault was committed by a co-employee who almost immediately thereafter committed suicide. The record discloses no animosity or bad feeling existing between the two employees prior to the accident and no evidence which discloses any reason whatsoever for the assault and killing.

The opinion of the majority purports to place Idaho firmly within the "growing minority of states" in adopting the "positional risk rule." With such pronouncement I have no quarrel, but believe that the explanation of the "positional risk rule" is couched in unfortunate terminology. I do not agree that "when injury results from a neutral cause, the rebuttable presumption arises that the injury arose out of the employment."

It is pointed out in 1 Larson, Workmen's Compensation Law, § 7, p. 48, that all *risks* bringing about injury fall within three categories: (1) risks distinctly associated with the employment (which are universally compensable); (2) risks personal to the claimant (which are almost universally non-compensable); and (3) neutral risks, that is, having no particular employment or personal character.

The ultimate question to be answered is, and always has been, whether the cause of the accident is associated with employment as a risk flowing from the employment. As stated by Larson, this is best illustrated by "all the things that can go wrong around a modern factory, mill, mine, transportation system, or construction project

* * * which constitute the bulk of what not only the public but perhaps also the original draftsmen of compensation acts had in their mind as their proper concern. Such type of accident falls readily within the increased risk test and are considered work connected in all jurisdictions."

Illustrative of the second type of risk are the cases cited in the majority opinion, Duerock v. Acarregui, 87 Idaho 24, 390 P. 2d 55 (1964), and Devlin v. Ennis, 77 Idaho 342, 292 P.2d 469 (1956). Both cases involved death or injury of employees by reason of assaults. In the Devlin case the court said:

"Here, the shooting of Devlin by his employer because of animosity was foreign to the employment, and Devlin's death therefore did not arise out of his employment by Searles, who was evidently determined to have his vengeance wherever he might find his victim." (A dispute over a woman between the two workmen)

The Duerock case involved the injury of an employee by her husband. The court in that case stated that the long history of friction and alcoholism and marital infelicity were the cause of the assault and that the injury was not the result of an accident arising out of employment.

"The risk existed before her employment. It was a personal risk she brought with her, a part of her domestic and private life. It was not a risk occasioned by, incident to, or a condition of, her employment."

Thus, neither of the above cited cases support the majority's view that those deaths would be presumed to be compensable under the positional risk rule, but for the employer producing evidence establishing a motive for the slaying personal to the employee. In both of said cases the factual pattern indicated that the cases fell into the second category rather than in the neutral risk category. Therefore, no presumption arose as to compensability.

The case of Louie v. Bamboo Gardens, 67 Idaho 469, 185 P.2d 712 (1947), cited by

the majority, is a true example of a "neutral" risk. Therein the claimant while at work was shot by a person who upon later prosecution therefor was found to be insane. In that case the how of the accident was clear, but the why was unexplained. Therefore, the court awarded compensation holding that it was the employment which placed claimant in the position in which he was assaulted.

The case of Foust v. Birds Eye Division of General Foods Corporation, 91 Idaho 418, 422 P.2d 616 (1967), cited by the majority as solidifying the positional risk doctrine in Idaho simply does not stand analysis. Claimant in that case was injured by a co-worker driving a private automobile while claimant was walking through a parking lot maintained by the employer for its employees. The court in that case held that a presumption arises that an injury arises out of and in the course of employment when it occurs on the employer's premises. The court held:

"The risks to which respondent was exposed derived solely from her employment."

This is much the same as if she had been struck by a lift truck while working at a bench within a factory. Rather obviously, the Foust case falls in the first category of risks incident to employment.

Our statute, I.C. § 72–201, provides a remedy to a workman who receives injury "caused by an accident arising out of and in the course of any employment * * *." I apprehend that we merely paraphrase our statutory language if we say a compensable accident happens "in the course of" employment if the workman is injured while at the place of employment. I also apprehend that a compensable accident arises "out of" employment when it occurs as the result of a risk reasonably incident to that employment. To state the last correlatively, it can be said that neither Duerock nor Devlin were shot as a result of a risk reasonably incident to employment. Rather, they both were shot at the place of employment because of risks

that they brought to it from their outside life and which were personal to them.

We then come to the instant case most illustrative of the "neutral" risk. The death arose "in the course of" employment, but there is no proof one way or the other whether it arose "out of" employment. We arrive at a result in the case based on Louie v. Bamboo Gardens, supra, because there is no risk relationship to the employment and none to the individual personally. The rationale for assigning such a risk to employment is stated by Larson:

"Either the employer or the employee must bear the loss; to show connection with the employment there is at least the fact that the injury occurred while the employee was working and would not have happened to him if he had not been working; to show connection with the employee personally there is nothing; therefore, although the work connection is slender, it is at least stronger than any connection with the claimant's personal life."

Thus, we must squarely face the fact that in the difficult cases involving "neutral risks" we assign the risk and order compensation although one of the requirements of our statute for such assignment of compensability is absent. With such action I do not disagree, but I think it well to understand what we do.

The majority opinion feels it necessary to expressly overrule Wells v. Robinson Construction, 52 Idaho 562, 16 P.2d 1059 (1932). I disagree with the need expressed by the majority opinion. Wells involved an employee struck and killed by lightning while at work. While Wells, in a sense, may be said to involve a "neutral risk" set of facts, I do not believe its overruling is either necessary or desirable to reach the decision of the majority in the case at bar. If Idaho is to be committed to the positional risk doctrine in act of God cases, it should so be committed in an act of God case, not a case such as the one at bar.