# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40660

MICHAEL VAWTER, )
)
   Claimant-Respondent-Cross Appellant, )
)
v. )
)
UNITED PARCEL SERVICE, INC.,  Employer, )
and LIBERTY INSURANCE CORPORATION, )
Surety, )
)
   Defendants-Appellants-Cross )
   Respondents, )
)
and )
)
STATE OF IDAHO INDUSTRIAL SPECIAL )
INDEMNITY FUND, )
)
   Defendant-Respondent-Cross Appellant. )
_____ )

Boise, December 2013 Term

2014 Opinion No. 6

Filed: February 7, 2014

Stephen Kenyon, Clerk

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Idaho Industrial Commission is <u>affirmed</u> in part and <u>reversed </u>in part.

Breen Veltman Wilson, Boise, for appellants. Susan R. Veltman argued.

Augustine Law Offices, PLLC, Boise, for respondent ISIF. Paul J. Augustine argued.

Ellsworth Kallas & DeFranco, PLLC, Boise, for respondent Michael Vawter. Rick D. Kallas argued.

_____

J. JONES, Justice

This appeal arises out of a worker's compensation case in which Michael Vawter sought compensation from his employer, United Parcel Service (UPS), for a back injury he claims he suffered as a result of his employment. In turn, UPS attempted to establish that Vawter did not suffer a compensable injury, but if he did the State of Idaho's Industrial Special Indemnity Fund (ISIF) is liable for a portion of his benefits. Ultimately, the Idaho Industrial Commission found that

Vawter was totally and permanently disabled and that UPS was solely responsible for Vawter's disability benefits because it was estopped from arguing Vawter had a preexisting condition, a necessary element of ISIF liability. UPS timely appealed, arguing that (1) the accident causing Vawter's injury did not arise out of his employment, (2) the Commission improperly applied the doctrine of quasi-estoppel to prevent it from asserting a preexisting condition, and (3) the Commission improperly awarded Vawter attorney fees. Vawter and ISIF both cross-appealed. Vawter contends the Commission improperly applied the doctrine of collateral estoppel to prevent him from recovering for all of his medical care.

## II.
## PROCEDURAL AND FACTUAL BACKGROUND

Vawter began working for UPS as a delivery driver in 1983. Throughout his employment with UPS, Vawter's job duties have included loading trucks with packages, driving to various locations, and delivering packages. During the last twelve years of his employment, Vawter primarily worked out of Cascade and would drive his personal vehicle from his home to the Arnold Aviation (AA) facility at the Cascade Airport to load his truck with packages. After completing his deliveries each day, Vawter would park his UPS truck at AA and leave his DIAD computer, an electronic device, inside AA's facility. The DIAD had to be stored inside the building because its batteries would fail if exposed to the truck's cold conditions overnight.

On the morning of December 18, 2009, Vawter reported for work at the AA facility. The temperature was approximately 20 degrees below zero, so Vawter started his truck to let it warm up and then went inside the AA facility. Once inside, Vawter clocked in, sat down, and bent over to tie his boot laces. While bending over, Vawter felt a pop and pain in his low back. After Vawter sought medical treatment, he was diagnosed by Dr. Roy Tyler Frizzell with a herniated disc and early cauda equina symptoms. Subsequently, Dr. Frizzell performed two surgeries on Vawter's back—one in January and the other in July of 2010.

On March 15, 2010, Vawter filed a worker's compensation complaint with the Idaho Industrial Commission, alleging he suffered a low back injury due to an accident that arose out of and in the course of his employment with UPS. UPS denied this claim for multiple reasons, including its contention that Vawter's injury did not result from an accident arising out of his employment. On September 28, 2010, a hearing was held by a Commission Referee to determine whether Vawter suffered a compensable injury. The Referee made and filed his proposed Findings of Fact, Conclusions of Law and Recommendation. The Commission chose not to adopt the

2

Referee's recommendation and issued its own Findings of Fact, Conclusions of Law and Order (5-17-11 Order), holding that Vawter (1) suffered an injury resulting from an accident arising out of and in the course of his employment with UPS; (2) was entitled to temporary total disability benefits from the date of the accident until December 6, 2010, the date he was declared medically stable; (3) was entitled to payment of his medical expenses, totaling $149,033.68; and (4) was not entitled to an award of attorney fees.

In August 2011, without conceding that Vawter was totally and permanently disabled, UPS filed a complaint against ISIF to establish ISIF's liability for a portion of Vawter's benefits, which ISIF denied. On May 17, 2012, the full Commission held a hearing to determine whether Vawter was totally and permanently disabled and, if so, whether ISIF was liable for a portion of Vawter's benefits. The Commission entered an order on September 28, 2012, holding: (1) UPS was liable for all of Vawter's medical expenses; (2) Vawter was totally and permanently disabled under the odd-lot doctrine; (3) Vawter had a preexisting physical impairment of 7% of the whole person from a 1990 low back injury; (4) Vawter's 7% low back impairment met all the elements of ISIF liability; but (5) UPS was estopped from asserting any position on Vawter's "preexisting physical impairment inconsistent with the 0% PPI rating" assessed by UPS' doctor in 1991; and (6) consequently, ISIF was not liable for any portion of Vawter's total and permanent disability. On December 5, 2012, the Commission issued an errata to correct typographical and factual errors in its September order and issued an Amended Findings of Fact, Conclusions of Law, and Order to incorporate the errata's corrections (12-5-12 Order).

UPS filed a Motion for Reconsideration of the Commission's decision. The Commission issued an Order on Reconsideration on December 10, 2012, affirming its prior finding as to quasi-estoppel, but holding that under the doctrine of collateral estoppel Vawter was barred from raising the issue of his entitlement to recovery of an additional $24,627.80 in medical expenses he incurred between the date of the injury and the date of the hearing before the Referee. Vawter then filed a Motion for Reconsideration of the Order on Reconsideration, which the Commission denied. UPS timely appealed, and Vawter and ISIF each cross-appealed.

### III.
### ISSUES ON APPEAL

I.    Did Vawter suffer an injury resulting from an accident arising out of his employment?

II.   Is ISIF responsible for any portion of Vawter's disability benefits?

III. Did the Commission improperly apply the doctrine of collateral estoppel to prevent Vawter from recovering all of the medical benefits UPS had previously denied him?

IV. Was Vawter entitled to attorney fees below?

**IV.**
**STANDARD OF REVIEW**

When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evidence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996). The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999). "The decision that grounds exist for awarding a claimant attorney fees [under I.C. § 72-804] is a factual determination which rests with the Commission." *Poss v. Meeker Mach. Shop*, 109 Idaho 920, 926, 712 P.2d 621, 627 (1985).

**V.**
**ANALYSIS**

**A. Injury and Accident**

To receive benefits under Idaho's worker's compensation regime, a claimant must establish that he suffered an injury as defined by Idaho Code § 72-102. *Dinius v. Loving Care and More, Inc.*, 133 Idaho 572, 574, 990 P.2d 738, 740 (1999). An "injury" is "a personal injury caused by an accident arising out of and in the course of any employment covered by the worker's compensation law." I.C. § 72-102(18)(a). An "accident" is "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." I.C. § 72-102(18)(b).

As a preliminary matter, UPS argues "the Industrial Commission erred by asserting UPS did not dispute an accident or injury as defined in Idaho Code § 72-102(18) had occurred." UPS states that although it "conceded" that Vawter had "'arrived at his satellite location and was preparing to begin his day,' this only relates to the 'in the course of' prong of the compensability test and was not a concession that an accident arising out of [Vawter's] employment occurred."

4

Thus, UPS admitted that Vawter's accident occurred "in the course of his employment," but did not concede that the accident "arose out of" his employment.

In its 5-17-11 Order, the Commission did indeed state that there was "no dispute that Claimant suffered an accident and injury on December 18, 2009, as those terms are defined in Idaho Code §§ 72-102(18)(a)(b) and (c), and that the accident causing the injury occurred during the course of Claimant's employment." Because an injury as defined by § 72-102 must have been caused by an accident arising out of and in the course of employment, at first blush it seems that the Commission assumed Vawter's back popping incident arose out of his employment. In the next sentence of its order, however, the Commission states that the "question is whether his accident and injury arose **out of** his employment." (emphasis in original). The Commission then spends the next 15 pages of its order on the issue of whether Vawter's injury was the result of an accident arising out of his employment. Thus, the Commission's initial misstatement was corrected because the Commission actually did consider, in detail, whether Vawter's injury met the requirements of § 72-102.

Because UPS neither disputes that an accident occurred nor that the accident causing Vawter's injury occurred in the course of his employment with UPS, the sole issue as to § 72-102 is whether substantial and competent evidence supports the Commission's finding that the accident arose out of Vawter's employment. An accident arises out of employment when a causal connection exists between the circumstances under which the work must be performed and the injury of which the claimant complains. *Spivey v. Novartis Seed Inc.*, 137 Idaho 29, 34–5, 43 P.3d 788, 793–4 (2002). "This prong of the compensability test examines the origin and cause of the accident." *Gage v. Express Personnel*, 135 Idaho 250, 254, 16 P.3d 926, 930 (2000). "If there is doubt surrounding whether the accident in question arose out of and in the course of employment, the matter will be resolved in favor of the employee." *Spivey*, 137 Idaho at 33, 43 P.3d at 792. "Whether an injury arose out of and in the course of employment is a question of fact to be decided by the Commission." *Id.* "An employer takes an employee as it finds him or her; a preexisting infirmity does not eliminate the opportunity for a worker's compensation claim provided the employment aggravated or accelerated the injury for which compensation is sought." *Id.*

When an injury occurs on an employer's premises, a presumption arises that the injury arose out of the claimant's employment. *Foust v. Birds Eye Div. of Gen. Foods Corp.*, 91 Idaho

5

418, 419, 422 P.2d 616, 617 (1967). Once a claimant establishes that he suffered an injury on his employer's premises, the employer then bears "the burden of producing evidence" to show that the claimant's "injury did not arise out of or in the course of his employment." *Kessler v. Payette County*, 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). If the employer meets its burden, the employee, "without the benefit of the statutory presumption . . . , has the burden of proving, by a preponderance of the evidence, all the facts essential to recovery." *Evans v. Hara's Inc.*, 123 Idaho 473, 479, 849 P.2d 934, 940 (1993).

Here, the Commission found that for the purposes of worker's compensation, the AA facilities were UPS' premises. This finding was not challenged on appeal. Applying the *Foust* presumption, the Commission required UPS to "come forward with proof sufficient to permit reasonable minds to conclude that the accident is not one arising out of and in the course of employment." The Commission decided that UPS overcame the *Foust* presumption because it demonstrated that "the risk of injury" to which Vawter "was exposed is arguably a common risk, with no particular association" to his employment with UPS, and then considered whether Vawter presented sufficient facts "to demonstrate that the accident is one arising out of and in the course of employment."

Answering this question in the affirmative, the Commission found that the injury Vawter sustained bore a causal connection to the work he was hired to perform. The Commission explained that Vawter "demonstrated, and no rational person would disagree, that anyone whose job includes the requirement of carrying boxes all day . . . would do well to keep his shoes tied." The Commission also noted that since UPS "conceded that the accident occurred while Claimant was performing the work he had been hired to perform, or some tasks reasonably incidental thereto, it makes it somewhat easier to answer in the affirmative the question of whether a causal connection exists between the conditions under which the work is required to be performed and the resulting injury."

UPS argues that Vawter has not established that his injury was the result of a related accident. In support of this argument, it contends that Vawter's accident did not arise out of his employment because Vawter's employment did not expose him to any greater risk of injury than he was exposed to outside of his employment and because the risk of injury to Vawter from tying his shoelaces was personal to him. Specifically, UPS contends that the "pop" precipitating Vawter's current disability occurred when he was tying his shoes—an activity UPS did not require

him to engage in.

UPS' argument as to the risk of injury fails because this Court has specifically overruled the necessity of proving that a claimant's employment exposed him to a greater risk of injury. Historically, to recover for worker's compensation, a claimant had to prove that his employment subjected him to a greater risk of injury than he would have otherwise been subject to. *Wells v. Robinson Constr. Co.*, 52 Idaho 562, 16 P.2d 1059 (1932) (overruled by *Mayo v. Safeway Stores, Inc.*, 93 Idaho 161, 457 P.2d 400 (1969)). As worker's compensation case law developed, however, the Court began to apply the positional risk doctrine, which "awards compensation for injuries resulting from accidents which are of neutral origin in the sense that their origin is neither occupational nor personal." *Mayo*, 93 Idaho at 163, 457 P.2d at 402. The Court applies this rule because "when the cause of the injury can be attributed to neither an occupational nor personal origin, and is thus neutral, there is no more reason to assign the resulting loss to the employee than to the employer." *Id.* Now, "a greater risk analysis is no longer required of a claimant . . . ." *Spivey*, 137 Idaho at 35, 43 P.3d at 794.

Furthermore, Vawter was actually required to have his shoes tied or at least secured. As explained by UPS' counsel in oral argument, UPS has a "no loose or dangling parts" shoe policy, which prohibited employees like Vawter from leaving shoelaces unsecured. Thus, as stated by the Commission, Vawter "needed to have his shoes tied to perform his work, and the injury that he suffered as a result of performing this task is assuredly connected to his employment." Vawter tied his shoes for UPS' benefit and the accident causing his injury therefore arose out of his employment. We therefore affirm the Commission's holding that Vawter's injury arose out of his employment.

### B.    ISIF Liability

Under Idaho's worker's compensation scheme, when an employee becomes totally and permanently disabled as the result of an industrial injury and a preexisting permanent impairment (PPI), "the employer is liable only for the disability caused by the injury, and ISIF is liable for the remainder." *Selzer v. State, Industrial Special Indemnity Fund*, 124 Idaho 144, 146, 857 P.2d 623, 625 (1993). A permanent impairment is "any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or progressive at the time of evaluation." I.C. § 72-422. Evaluation of permanent impairment is conducted through a rating analysis, expressed as a percentage. This rating

represents "a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members." I.C. § 72-422. When a claimant's permanent disability is "less than total, if the degree or duration of disability resulting from an industrial injury or occupational disease is increased or prolonged because of a preexisting physical impairment, the employer shall be liable only for the additional disability from the industrial injury or occupational disease." I.C. § 72-406. Thus, the Commission will "apportion" the claimant's permanent disability, and the portion attributable to the preexisting impairment is the responsibility of ISIF, and the portion attributable to the industrial injury is the responsibility of the employer.

Following the 2009 injury, the Commission concluded that Vawter was totally and permanently disabled under the odd lot doctrine and had a 19% impairment rating. The Commission apportioned Vawter's 19% impairment rating as follows: it assigned a 12% rating due to his 2009 injury and a 7% rating due to a work-related 1990 injury. Because of this apportionment, ISIF would normally be liable for Vawter's benefits stemming from the 7% rating, except that the Commission applied the doctrine of quasi-estoppel to prevent UPS from asserting that Vawter had a preexisting impairment.

UPS contends that the Commission erred in applying quasi-estoppel, while Vawter and ISIF contend that the Commission erred in determining that, had UPS not been estopped, ISIF would be liable for a portion of Vawter's benefits. A party seeking to establish ISIF liability must demonstrate that the requirements of Idaho Code § 72-332(1) have been met. Section 72-332(1) provides:

> If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

Under § 72-332(1), a party attempting to prove ISIF liability must show: (1) "there was a pre-existing impairment"; (2) "the impairment was manifest"; (3) "the impairment was a subjective

8

hindrance"; and (4) "the pre-existing impairment and the subsequent injury in some way combine to result in total permanent disability." *Bybee v. State, Industrial Special Indemnity Fund*, 129 Idaho 76, 80, 921 P.2d 1200, 1204 (1996).

The parties do not dispute that Vawter's back condition stemming from his 1990 injury was manifest. Thus, at issue is whether the 1990 back injury resulted in a preexisting impairment, whether that impairment was a subjective hindrance to Vawter, and whether that impairment combined with Vawter's 2009 injury to render him totally disabled.

The Commission found that Vawter's condition following his 1990 injury constituted a preexisting impairment and warranted a 7% rating, but it estopped UPS from arguing this point because it found UPS had taken inconsistent positions as to whether the 1990 injury warranted a rating. Throughout this case, UPS has taken the position that Vawter's back condition resulting from his 1990 injury warranted a 7% rating. Throughout its history as Vawter's employer, however, UPS has been content to rely on its doctor's position that Vawter's condition following his 1990 injury did not warrant a rating.

In April 1991, Vawter was evaluated by Dr. Richard Knoebel, a physician retained by UPS and its then-insurer, Liberty Northwest Insurance. After he examined Vawter, Dr. Knoebel opined that Vawter could return to work without restriction and without any rating referable to the 1990 injury. In keeping with Dr. Knoebel's opinion, Liberty Northwest Insurance issued a "notice" of "Change of Benefit or Status" in which it advised Vawter of a change in the status of his claim. It stated, "[p]er Dr. Knoebel's report, you were released to return to work effective 04-02-91. You were determined to be medically stationary without any impairment." The Industrial Commission's records "reflect that Employer did not pay any impairment to Claimant as a consequence of the 1990 accident." In the Commission's view, UPS took the position that Vawter had a 0% PPI rating for his 1990 low back injury because it was in its interest "to minimize its exposure for the payment" of benefits to Vawter "in connection with the 1990 accident." According to the Commission:

> [UPS] obtained a favorable position on this issue after it retained the services of Dr. Knoebel in 1991. In reliance on Dr. Knoebel's position, Employer took the position that it was not liable for the payment of further benefits, including PPI/PPD. Eventually, the period of limitation ran, and there the matter sat for many years until the occurrence of the subject accident made it beneficial to Employer to argue that the 1990 accident had, in fact, produced a significant PPI.

Indeed, now the shoe is on the other foot and UPS takes the position that Vawter has a 7% PPI

rating for his 1990 low back injury, based on Dr. Frizzell's 2010 testimony. In front of the Commission, "in pursuit of Idaho Code § 72-406 or § 72-322 apportionment," UPS "has argued that the opinion of Dr. Frizzell should carry more weight" than Dr. Knoebel's rating. This position gives UPS "the opportunity to assign some portion of the blame" for Vawter's disability to a preexisting condition and therefore shift some liability to ISIF.

Thus, UPS' current position is inconsistent with the position it took in 1991 and, because of this, the Commission estopped UPS from asserting it. In the Commission's view, "this is exactly the type of inconsistent position that the doctrine of quasi-estoppel is intended to address." The doctrine of quasi-estoppel "prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken." *Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006) (quoting *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 144, 75 P.3d 194, 198 (2003)). Quasi-estoppel stands for the proposition that "'one cannot blow both hot and cold.'" *KTVB, Inc. v. Boise City*, 94 Idaho 279, 281, 486 P.2d 992, 994 (1971) (quoting *Godoy v. Hawaii*, 354 P.2d 78 (Haw. 1960)).

> This doctrine applies when: (1) the offending party took a different position than his or her original position, and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in. *C & G, Inc.*, 139 Idaho at 145, 75 P.3d at 199. Estoppel theories generally present mixed questions of law and fact. *The Highlands, Inc. v. Hosac*, 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997) (citations omitted). Because mixed questions of law and fact are primarily questions of law, this Court exercises free review. *Id.*

*Allen v. Reynolds*, 145 Idaho 807, 812, 186 P.3d 663, 668 (2008).

UPS argues that because neither Vawter nor ISIF pleaded quasi-estoppel, identified it as an issue in the March 7, 2012 Notice of Hearing, or addressed it at the 2012 hearing, they cannot assert it because quasi-estoppel is an affirmative defense. ISIF argues that UPS had notice of the quasi-estoppel issue because it had the burden of proving Vawter suffered from a preexisting permanent physical impairment, and its previous position as to Vawter's condition following the 1990 incident was necessarily implicated. Vawter argues he raised the issue of quasi-estoppel in his post-hearing brief and UPS simply failed to address it.

The Commission is not bound by the Idaho Rules of Civil Procedure, but it does have its own rules of procedure. Under these rules, the Commission is required to give parties notice of

10

the issues to be decided but does not need to state each individual issue. *Gomez v. Dura Mark, Inc.*, 152 Idaho 597, 601, 272 P.3d 569, 573 (2012). The issue of apportionment was listed in the 2012 Notice of Hearing, and inherent in that issue was the 0% rating issued by Dr. Knoebel. Therefore, UPS had sufficient notice of the quasi-estoppel issue.

Furthermore, in his 2012 Opening Post-Hearing Brief, Vawter argued the following:

Based on the opinion from its own IME physician, Richard Knoebel, M.D., UPS did <u>not</u> pay the Claimant any PPI benefits in connection with his 10.22.90 low back injury claim (Cl. 5.17.12 H.E. 001015). UPS is now trying to avoid paying the Claimant the full 19% PPI rating that he deserves from his 12.18.09 injury and 2 subsequent back surgeries by arguing that 7% of the Claimant's 19% PPI rating should be apportioned to his 10.22.09 low back injury. This change in position gives UPS a windfall at the Claimant's expense.

The Industrial Commission should apply the doctrine of *quasi-estoppel* to prevent UPS from taking an inconsistent position now on the issue of whether the Claimant should receive a PPI rating for his 10.22.90 low back injury which is detrimental to the Claimant . . . .

(emphasis in original). Because of Vawter's briefing, UPS should have at least been aware that Vawter was attempting to raise an argument as to quasi-estoppel. As noted by the Commission, however, UPS failed to address the issue of quasi-estoppel in its own briefing. In its Order on Reconsideration, the Commission stated:

although both Claimant and the ISIF argued in their post-hearing briefs that Employer should not be allowed to take a different position in this action concerning Claimant's preexisting impairment than it did in connection with the 1990 accident, Employer's post-hearing brief devotes not one sentence to treatment of the doctrine of quasi-estoppel, or to the ISIF's challenge to Employer's inconsistent position. From the Employer's failure to protest, the Commission concluded that Employer gave its implied consent to the Commission's consideration of these arguments. To the extent necessary, the Commission will treat these arguments as though they were raised in the issues noticed for hearing.

Thus, even if UPS did not have notice of the quasi-estoppel argument, because it failed to address the timeliness of Vawter's argument as to quasi-estoppel when Vawter actually raised it, it is not permitted to do so now. Because of its position in 1991, UPS avoided paying benefits to Vawter. Now, UPS takes the opposite position to again avoid making payments—if successful, its current position would allow UPS to shift some of its cost to ISIF. Thus, under the doctrine of quasi-estoppel, UPS may not assert that Vawter had a preexisting impairment prior to his 2009 injury. Because UPS may not make an argument as to a preexisting impairment, UPS cannot

establish ISIF liability. Thus, UPS is solely liable and we need not consider the other issues of ISIF liability raised by Vawter and ISIF.

### C.    Collateral Estoppel

In its 5-17-11 Order the Commission awarded Vawter medical benefits in the amount of $149,033.68. In its 12-5-12 Order, the Commission held UPS liable for payment of Vawter's medical bills, specifically including those incurred prior to May 17, 2011. UPS sought and obtained reconsideration, whereupon the Commission reconsidered and denied Vawter recovery of $24,627.80 in medical expenses incurred between the date of the accident and September 27, 2010, based on application of the doctrine of collateral estoppel.

Vawter contends that the Industrial Commission erred in applying the doctrine of collateral estoppel to prevent him from recovering the $24,627.80 in medical expenses simply because he did not include this amount in his initial demand for medical benefits. Instead, Vawter couched his initial demand "in a specific dollar amount" that did not include the payments totaling $24,627.80 because he had not yet discovered them. The Commission decided that because it had already "resolved the issue of the extent of [Vawter's] entitlement to medical benefits by ordering the payment of the amount he requested," Vawter was not allowed to later seek payment for these additional expenses.

Collateral estoppel is "the doctrine that precludes relitigation of the same issue in a separate cause of action" and exists to protect "litigants from the burden of litigating an identical issue with the same party or its privy." *Rodriguez v. Dep't of Correction*, 136 Idaho 90, 92, 29 P.3d 401, 403 (2001).

> This Court has determined that five factors must be evident in order for collateral estoppel to bar the relitigation of an issue determined in a prior proceeding: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id.* at 93, 29 P.3d at 404. "Whether collateral estoppel bars the relitigation of issues adjudicated in prior litigation between the same parties is a question of law" upon which the Court exercises free review. *Id.* at 92, 29 P.3d at 403.

Here, the Commission held that "the doctrine of issue preclusion (collateral estoppel)"

barred "relitigation of the issue of extent of Claimant's entitlement to medical benefits under the peculiar facts of this case." In the Commission's view, Vawter

> could have simply requested that the Commission enter an order holding Employer responsible for all of the accident-related medical bills incurred by Claimant to the date of the hearing. Instead, Claimant asked the Commission to make an award in a specific dollar amount, even though Claimant evidently had some concern that his tally might not have captured every medical bill. Therefore, on the issue of the extent of Claimant's entitlement to payment of medical bills, the commission did as Claimant asked and issued an order for a sum certain of $149,033.68.

The Commission's decision was in error because collateral estoppel does not apply to this case, which involved multiple hearings but one cause of action. Collateral estoppel "precludes relitigation of the same issue in a separate cause of action." *Id.* A cause of action is a "group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person . . . ." Black's Law Dictionary 251 (9th ed. 2009).

> Here, all of the orders deal with the same operative facts related to Vawter's employment with UPS, so the orders do not deal with separate factual situations. Therefore, all the hearings and orders address only one cause of action. *See Sanije Berisha, Claimant*, IC 2002-003038, 2012 WL 2118142 (Idaho Ind. Com. May 30, 2012) ("Collateral estoppel is inapplicable in cases like this one where the litigation, albeit including several different hearings, is nevertheless all part of the same case."). Furthermore, the Commission's 2010 order awarding medical benefits was not a final order but, rather, an interlocutory order that was subject to modification until such time as a final, appealable order was entered. Thus, the Commission's decision to apply collateral estoppel was in error. For that reason, Vawter is entitled to recover all of his medical expenses, as initially provided by the Commission in its 12-5-12 Order.

### D. Attorney Fees

Vawter and UPS dispute the extent to which the Commission should have awarded attorney fees and whether Vawter is entitled to fees on appeal. Idaho Code § 72-804 provides for an award of attorney fees in the event an employer unreasonably denies a claim, or neglects to pay or refuses to pay an injured employee compensation within a reasonable time.

> If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused

within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

I.C. § 72-804.

> The Industrial Commission's determination that a claimant is entitled to attorney fees under I.C. § 72–804 is factual in nature and will be upheld where it is based upon substantial and competent evidence in the record. *Hoskins v. Circle A Constr., Inc.*, 138 Idaho 336, 341, 63 P.3d 462, 467 (2003). The Commission has discretion under I.C. § 72–804 to determine the amount of attorney fees to be awarded. *Swett v. St. Alphonsus Reg'l Med. Ctr.*, 136 Idaho 74, 78, 29 P.3d 385, 389 (2001).

*Bradley v. Washington Grp. Int'l,* 141 Idaho 655, 657, 115 P.3d 746, 748 (2005). The issue posed is not the amount of attorney fees to be awarded but the entitlement to fees. Thus, we will uphold the Commission's determination if it is supported by substantial and competent evidence.

In its 5-17-11 Order, the Commission determined that Vawter was not entitled to an award of attorney fees because Liberty, UPS' insurer, did not unreasonably deny his claim. Although the Commission noted that the case was "close," it considered the factors weighing for and against an award of fees. The Commission stated that "[t]here is no bright line in Idaho case law regarding when an accident arises out of employment and there are no cases involving boot lace tying." "More importantly, the scope and reach of the court's decision in *Spivey v. Novartis Seed Inc.*, is a subject of legitimate debate."

After the Commission entered its 5-17-11 Order, UPS sought to have Vawter's compensation award stayed, but the Commission denied this request. In its order denying UPS' request for a stay, the Commission refused to award Vawter attorney fees because it found that UPS and Liberty had "not unreasonably delayed payment of benefits." The Commission explained that after it issued its decision, UPS "filed a notice of appeal and expected the award to be stayed." It determined that UPS' "request was not unreasonable" because "[t]here were compelling arguments" in UPS' favor.

In its 12-5-12 Order, the Commission did award Vawter attorney fees under I.C. § 72-804 because UPS or Liberty unreasonably denied him "(a) Medical expenses incurred subsequent to September 28, 2010; (b) Mileage, per diem, and lodging expenses incurred by Claimant

subsequent to September 28, 2010; (c) The PPI award given by Dr. Frizzell following Claimant's date of medical stability in November 2010." The Commission explained that "[a]bsent a good faith dispute" over Vawter's "entitlement to a particular benefit," UPS "had an obligation to timely pay the same once this claim had been found to be compensable under the workers' compensation laws of this state." The Commission partially reaffirmed this decision in its Order on Reconsideration, but limited the award of attorney fees "for Employer's post January 30, 2012 refusal to pay the 12% PPI award made by Dr. Frizzell."

UPS appealed the Commission's award of fees in the 12-5-12 Order and contends that at the time the Commission made its decision, whether Vawter was entitled "to such benefits had not been determined." Vawter argues the Commission erred when it failed to award him fees at every stage of this case, because UPS denied his claim "without any reasonable factual or legal reason." Vawter also asks the Court to award him his fees for this appeal.

We decline to disturb the Commission's determination of the attorney fee issues. The Commission explained its reasoning based on the factual situation presented in the record and we decline to second guess its determination. We therefore affirm the Commission's determination that Vawter's fee award is limited to UPS' "post January 30, 2012 refusal to pay the 12% PPI award made by Dr. Frizzell." The case is remanded to the Commission for determination of the attorney fee in accordance with the Commission's procedures.

## V.
## CONCLUSION

We reverse the Industrial Commission's determination that Vawter is not entitled to recover all medical expenses incurred between the date of the accident and September 27, 2010. We affirm the Industrial Commission in all other respects. The case is remanded in further proceedings in accordance with this opinion. Costs on appeal, but no attorney fees, to Vawter.

Chief Justice BURDICK, and Justices EISMANN, HORTON, and Justice Pro Tem SCHROEDER CONCUR.

15