IN THE SUPREME COURT OF THE STATE OF IDAHO

**Docket No. 41593**

| | |
|---|---|
| TRUDY DEON, | ) |
| | ) |
|    Claimant-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| H&J, INC., d/b/a BEST WESTERN, COEUR | ) |
| D'ALENE INN & CONFERENCE CENTER, | ) |
| Employer, LIBERTY NORTHWEST | ) |
| INSURANCE CORPORATION, Surety, and | ) |
| IDAHO SPECIAL INDEMNITY FUND, | ) |
| | ) |
|    Defendants-Respondents. | ) |
| ———————————————————— | ) |

Boise, November 2014 Term

2014 Opinion No. 125

Filed: November 28, 2014

Stephen W. Kenyon, Clerk

Appeal from the Idaho Industrial Commission.

The Order on Reconsideration is <u>reversed</u>. The case is <u>remanded</u> to the Commission with instructions to reinstate the Findings of Fact, Conclusions of Law, and Order dated May 3, 2013.

James, Vernon & Weeks, P.A., Coeur d'Alene, for appellant. Stephen J. Nemec argued.

Law Offices of Kent W. Day, Boise, for respondents H&J, Inc. and Liberty Northwest. Joseph M. Wager argued.

Jones, Brower & Callery, PLLC, Lewiston, for respondent ISIF. Thomas W. Callery argued.

————————————————

J. JONES, Justice

    Trudy Deon brought worker compensation claims against her employer, H&J, Inc., and its surety, Liberty Northwest, (Employer/Surety) and the Idaho Special Indemnity Fund (ISIF). Deon eventually settled with ISIF but the claim against Employer/Surety went to a hearing that resulted in the Idaho Industrial Commission finding Employer/Surety 100% liable for her total and permanent disability (TPD). The Commission decided *sua sponte* to reconsider its decision and invited the parties to brief the issue of whether Deon was estopped from arguing Employer/Surety was 100% liable, given her settlement with ISIF. In an order on

1

reconsideration, the Commission held that Deon was so estopped and apportioned 23.92% of her TPD to Employer/Surety. Deon filed a timely appeal.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Deon was employed as a full-time maintenance technician for H&J, Inc.[1] from 2003 until 2009. Several years before she began her work for H&J, Deon injured her neck and shoulders, resulting in a 6% whole person permanent impairment rating. Then in 2006, Deon was attacked by dogs, resulting in an additional 7% whole person permanent impairment rating due to lower extremity injuries. This injury did not happen in the course of her employment.

The accident leading to the current action happened in October 2008. While Deon was using a small power auger to clear the drain in a kitchen sink at the hotel, the auger caught her right glove, twisting and crushing her right hand and wrist. She was initially diagnosed with a sprain to her right hand, sprains to two of her fingers, and contusions. Although Deon was eventually cleared to return to full-time work, her supervisor felt she was not physically capable of performing her pre-injury duties. Deon's doctor ordered significant lifting restrictions on Deon, and her employment was eventually terminated because her employer had no available work within her restrictions. Doctors varied on the permanent impairment ratings they assigned to the hand/wrist injury, ranging from 2% to 4%. Likewise, three different vocational experts examined Deon's circumstances, giving opinions that varied widely as to her employability and overall disability rating, which ranged from 45% to 85%.

Deon filed worker compensation complaints against Employer/Surety and ISIF, and these actions were consolidated shortly thereafter. Before the matter went to hearing, Deon negotiated a settlement agreement with ISIF, though the agreement was not actually executed by the parties and approved by the Commission until after the hearing. The agreement between Deon and ISIF stipulated that Deon was totally and permanently disabled based upon the combined effects of her pre-existing impairments and the injury to her right hand and wrist. It further stipulated that the ISIF was responsible for 60% of Deon's TPD benefits in the form of a lump sum payment of $70,000. The Commission approved the agreement on November 8, 2012. Her claim against Employer/Surety went to hearing before a Commission referee in mid-October, 2012. At the hearing, and in her post-hearing briefing, Deon took the position that her TPD stemmed solely

---

[1] H&J, Inc. owns Best Western Coeur d'Alene Inn & Conference Center where Deon actually worked in the maintenance department of the hotel.

from the hand/wrist injury.

Approximately six months after the evidentiary hearing and the approval of the ISIF settlement agreement, the Commission issued its Findings of Fact, Conclusions of Law and Order (Decision), wherein it found the evidence showed Deon was totally and permanently disabled solely by reason of her hand/wrist injury. Therefore, Employer/Surety was 100% responsible for her disability benefits. The same day it issued the Decision, the Commission also informed the parties it intended to reconsider the Decision pursuant to Idaho Code section 72-718 to consider the effect the ISIF settlement agreement should have on Employer/Surety's liability. The Commission *sua sponte* raised, and invited the parties to brief, the issue of whether Deon's settlement with the ISIF should have some collateral estoppel effect on her claim of Employer/Surety's 100% liability.

Following the parties' briefing, the Commission issued its Order on Reconsideration, wherein it found that Deon was estopped from arguing Employer/Surety was 100% liable. The Commission apportioned liability for Deon's disability between Employer/Surety and ISIF, assigning Employer/Surety 23.92% of the liability rather than the 100% it had previously ordered in its Decision. Deon appeals.

## II.
## ISSUES ON APPEAL

1. Whether the Commission erred in holding that collateral estoppel precluded Deon from arguing Employer/Surety is 100% liable for her total permanent disability.

2. Whether Deon is entitled to attorney fees on appeal.

## III.
## ANALYSIS

### A.      Standard of review.

The Court in *Vawter v. United Parcel Service, Inc.* stated the standard of review applicable in this case: "When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings." 155 Idaho 903, 906–07, 318 P.3d 893, 896–97 (2014).

### B.      The Commission erred in *sua sponte* raising the issue of collateral estoppel.

When an employee has pre-existing impairments that combine with a subsequent work injury to cause an employee TPD, the Employer/Surety is liable only for the disability caused by

3

the subsequent work injury, and the ISIF is liable for the disability attributable to the pre-existing condition. I.C. § 72-332(1). "Impairment" refers to the loss of meaningful physical function, while "disability" refers to the loss of ability to engage in gainful activity because of that loss of physical function as well as non-medical considerations. I.C. §§ 72-422, 72-423, 72-425. TPD can be shown by either establishing that a claimant is 100% disabled or that, because of a disability, the claimant is essentially unemployable to such a degree he/she may be classified as totally disabled. *See Carey v. Clearwater Cnty. Rd. Dep't.*, 107 Idaho 109, 112, 686 P.2d 54, 57 (1984). The latter method is often referred to as the "odd-lot" doctrine. *Id.* When the level of permanent physical impairment is less than the level of disability, there is a question as to how to apportion the excess disability liability between the liable parties. In *Carey*, we held that when a claimant is found totally and permanently disabled under the odd-lot doctrine, liability for the disability in excess of impairment should be apportioned between the Employer/Surety and ISIF in proportion to the permanent physical impairments for which each is responsible. *Id.* at 118, 686 P.2d at 63. "The purpose of [the *Carey*] formula is to make employers liable only to the extent of disability caused by the second industrial accident, with the remainder being paid by the ISIF." *Hamilton v. Ted Beamis Logging & Constr.*, 127 Idaho 221, 225, 899 P.2d 434, 438 (1995). "The [*Carey*] formula is inapplicable when the pre-existing impairment *does not combine* with the subsequent injury to result in total disability." *Bybee v. State, Indus. Special Indemnity Fund*, 129 Idaho 76, 81, 921 P.2d 1200, 1205 (1996) (emphasis added).

Here, the Commission found that Deon is totally and permanently disabled under the odd-lot doctrine. Employer/Surety does not contest that finding on appeal. The issue before the Court is whether Deon is collaterally estopped from arguing Employer/Surety is 100% liable for her TPD, given the fact that she previously settled with ISIF and agreed that ISIF was partially liable for her disability. The Commission held that she was so estopped and, therefore, determined that responsibility for her disability benefits must be apportioned.

Deon argues Employer/Surety waived the collateral estoppel defense because affirmative defenses not raised prior to hearing are waived. She contends Employer/Surety likely made a strategic decision not to raise the issue because raising collateral estoppel may have suggested that Employer/Surety agreed with the stipulated fact that Deon was totally and permanently disabled, which is something Employer/Surety contested throughout the litigation before the Commission. Deon's position is that Employer/Surety should not be permitted to strategically

4

choose to not raise the defense and then also get the benefit of the defense when Employer/Surety's initial strategic choice did not work in its favor. She concludes that because Employer/Surety failed to raise the collateral estoppel issue, the Commission improperly raised it *sua sponte*. Employer/Surety counters that Deon has taken inconsistent positions at various stages of the litigation and the issue of whether Deon should be estopped from taking such inconsistent positions is inherent in the noticed issue of apportionment. We agree with Deon's position that the Commission erred in *sua sponte* raising the issue of collateral estoppel.

Idaho case law does not directly address whether a tribunal has the authority to *sua sponte* raise the issue of collateral estoppel. However, we agree with the following observation of the U.S. Supreme Court:

> [T]he State parties argue that even if they earlier failed to raise the preclusion defense, this Court should raise it now *sua sponte*. Judicial initiative of this sort might be appropriate in special circumstances.[2] Most notably, if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. . . . Where no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte*, thereby eroding the principle of party presentation so basic to our system of adjudication.

*Arizona v. California*, 540 U.S. 392, 412−13 (2000) (citation and quotations omitted). The same rationale applies in the administrative context.

This Court has had occasion to address the propriety of a tribunal *sua sponte* raising defenses or theories in the tort arena. In *Sales v. Peabody*, the Court recently had before it a dispute in which the district court raised *sua sponte* the affirmative defense of an intervening, superseding cause of injury in a tort case. 157 Idaho 195, 335 P.3d 40 (2014). There we held that it was error for the district court to raise this affirmative defense *sua sponte* and dispose of the case based on the defense, which had never been asserted by the defendant before the court raised it. *Id.* at 201, 335 P.3d at 46; *see also Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 531, 887 P.2d 1034, 1038 (1994) (where we reversed the district court's grant of summary

---

[2] This Court has on fairly rare occasion raised a defense that is readily apparent from the record before it. One such defense is judicial estoppel, which "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Sword v. Sweet*, 140 Idaho 242, 252, 92 P.3d 492, 502 (2004). "Because [judicial estoppel] is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion." *Id.* We have not had occasion to consider whether the Commission has the authority to invoke an administrative counterpart of the doctrine of judicial estoppel and do not do so here. It must be observed, however, that the Commission derives its authority solely from statutory law and does not have the ability to operate in the equitable realm.

judgment, holding it was improper for the court to *sua sponte* raise the proximate causation issue).

In *Heitz v. Carroll*, we reversed the trial court's grant of a motion for a new trial because it improperly relied on issues not raised by the parties. 117 Idaho 373, 788 P.2d 188 (1990). There, the parties submitted to the jury a wrongful death case with jury instructions and special interrogatories agreed to by the parties. *Id.* at 376, 788 P.2d at 191. After a judgment in favor of defendants, plaintiffs moved for a new trial. *Id.* The trial court decided *sua sponte* that the jury had been improperly instructed because the instructions did not allow for recovery of medical expenses irrespective of whether the allegedly negligent doctor proximately caused the death of the patient. *Id.* at 378, 788 P.2d at 193. Because the plaintiffs chose to pursue the case as a wrongful death action rather than a claim by the estate of the decedent to recover medical expenses, we found it inappropriate that the trial court should not hold the parties to that decision. *Id.* We reasoned that

> [w]here a plaintiff has chosen to submit his case upon certain issues or theories, they are bound by those choices, and it is error for the trial court to afterward grant one party a new trial on the basis that the plaintiff might have prevailed had it raised a different issue.

*Id.* In *Heitz*, "the plaintiffs, whether intentionally or by oversight, chose not to submit [an issue] to the jury. Since the plaintiffs were bound by the issues upon which they tried their case, the trial court erred when it considered other issues not raised by the litigants." *Id.* at 379, 788 P.2d at 194. We therefore reversed the trial court's grant of a motion for new trial. *Id.*

Employer/Surety cites our decision in *Vawter* for the proposition that the Commission has the authority to invoke estoppel where apportionment of disability is identified as an issue in the hearing notice. In *Vawter*, this Court upheld the Commission's use of quasi-estoppel to prevent an employer from benefitting twice by taking inconsistent positions at various points in the litigation. 155 Idaho at 912, 318 P.3d at 902. There, the employer argued the Commission erred in applying quasi-estoppel because neither ISIF nor the claimant in that case pleaded the defense, identified it as an issue in the notice of hearing, or addressed it at the evidentiary hearing. *Id.* at 911, 318 P.3d at 901. We stated that the employer's inconsistent positions were inherent in the noticed issue of apportionment of the disability liability between the employer and ISIF. *Id.* However, in that case, it was not the Commission that initially raised the issue of quasi-estoppel. In the claimant's opening post-hearing brief, the claimant argued the employer's

6

change in position gave it a windfall at the claimant's expense, and "[t]he Industrial Commission should apply the doctrine of *quasi-estoppel* to prevent [employer] from taking an inconsistent position." *Id.* (emphasis in original). ISIF also addressed the problem of the employer's inconsistent positions in its post-hearing briefing. The employer did not respond to these arguments made by both ISIF and the claimant. *Id.* Based on these facts, the Commission said: "From the Employer's failure to protest [the other parties' quasi-estoppel arguments], the Commission concluded that Employer gave its implied consent to the Commission's consideration of these arguments. To the extent necessary, the Commission will treat these arguments as though they were raised in the issues noticed for hearing." *Id.* at 911, 318 P.3d at 901. Thus, the Commission appears in *Vawter* to have assumed that an issue would have to be raised by one of the parties in order to be considered by the Commission. That would be a correct assumption. It should also be noted that the issue of apportionment was actually litigated in *Vawter*, whereas it was not here. Although it was listed as an issue in the notice of hearing, it was not raised at the hearing, presumably because of the settlement between Deon and ISIF. Thus, Employer/Surety had the opportunity to raise the issue at the hearing but did not take advantage of that opportunity. The Commission then specifically found that apportionment was "not appropriate" because Deon's latest injury "alone renders her totally and permanently disabled."

The Commission erred by *sua sponte* raising the issue of collateral estoppel. The Commission and Employer/Surety knew about the ISIF settlement agreement for months before a decision was rendered and never raised the estoppel issue. Deon filed complaints against both her Employer/Surety and the ISIF. As a result of mediation, she reached a tentative settlement agreement with ISIF on October 5, 2012. The agreement was reduced to writing, signed by the parties on October 19, 2012, and approved by the Commission on November 8, 2012.[3]

---

[3] On November 8, 2012, the Commission signed an Order of Approval and of Discharge Upon Lump Sum Payment, approving the settlement agreement between Deon and the ISIF. Then, in its Order on Reconsideration, the Commission stated that "[t]he Commission can perhaps be criticized for not recognizing (or remembering) its approval of the lump sum settlement while drafting the decision in the case against Employer/Surety." This oversight suggests the Commission's review of the settlement agreement was rather superficial. In approving the agreement, the Commission merely stated that "it appear[ed] that the interests of justice and [Deon] are and will be served by approving" the agreement. This Court has warned the Commission against routinely approving such settlement agreements without closely examining them. *See Wernecke v. St. Maries Joint Sch. Dist. No. 401*, 147 Idaho 277, 286, 207 P.3d 1008, 1017 (2009). "Unless the Commission finds that the requisite elements exist, it may not approve a lump sum settlement agreement involving ISIF." *Id.* We take this opportunity to remind the

Employer/Surety was present at the same mediation where Deon reached an agreement with ISIF. Additionally, the fact that Deon had settled with the ISIF was brought up at the October 16, 2012, evidentiary hearing where Deon, Employer/Surety, and the Commission were all present. In his opening remarks on the record, the referee noted that ISIF was not present and that he understood "the ISIF has settled with claimant prior to today." Deon's counsel confirmed that, although they had not yet executed the paperwork, Deon and the ISIF "have reached a settlement on the issues." The parties and the referee then proceeded to narrow the issues before the Commission based on the fact that ISIF had settled with Deon.

At this hearing, and in subsequent briefing, Deon argued that apportionment between Employer/Surety and the ISIF "is not deemed relevant given that the Claimant's total and permanent disability stems solely from the October 4, 2008 industrial accident." Despite its knowledge that Deon had settled with ISIF, Employer/Surety's arguments at hearing and in post-hearing briefing were completely devoid of any reference to the ISIF settlement, collateral estoppel, quasi-estoppel, or Deon's inconsistent litigative positions.[4]

When the Commission issued its Decision, it determined that Deon was totally and permanently disabled and that Employer/Surety was 100% liable under the odd-lot doctrine as Deon had argued. After considering all the hearing evidence and the parties' briefing, the Commission found apportionment between the ISIF and Employer/Surety "is not appropriate" because "[t]he record does not establish that Claimant's pre-existing leg condition combined with her 2008 industrial accident to render her totally and permanently disabled. Rather, Claimant's right upper extremity condition [(her hand/wrist injury)] alone renders her totally and permanently disabled."

However, on the same day the Commission issued its Decision, it also issued a notice of reconsideration pursuant to Idaho Code section 72-718, which raised for the first time the collateral estoppel issue and invited the parties to brief the same. Specifically, the Commission wanted to know whether Deon's stipulation to ISIF's partial liability for her TPD estopped her

---

Commission of our warning that ISIF settlement agreements should not be "rubber-stamped" as a matter of routine but, rather, must be substantively considered as required by Idaho Code section 72-404 and the applicable case law.

[4] The Commission states in its notice of reconsideration that the issue of estoppel could not have ripened until it made findings following the evidentiary hearing because estoppel would have been irrelevant if the Commission had not found Employer/Surety 100% liable as it did. This point is not accurate since both the Employer/Surety and the Commission had notice that Deon continued to argue Employer/Surety was 100% liable despite her stipulation that the ISIF was partially liable. There is no reason the Employer/Surety could not have asserted in its argument and briefing that Deon should be estopped from asserting Employer/Surety was 100% liable.

from then arguing that Employer/Surety was 100% liable. After the parties briefed the issue, the Commission issued a new order holding that Deon was estopped from asserting a position inconsistent with her stipulation that ISIF was partially liable for her TPD. It then apportioned TPD liability according to the *Carey* formula, changing Employer/Surety's liability from 100% to 23.92%.

As demonstrated by our decisions in *Sales* and *Heitz*, this Court takes a dim view of fact-finding tribunals raising defenses or theories *sua sponte*. Theories and defenses should be determined by the parties, not the tribunal. Just as in *Sales*, where we held it was error for the district court to raise an affirmative defense not raised by the parties, the Commission erred here in raising collateral estoppel, which was never raised by Employer/Surety before the Commission invited briefing on the issue. Although Employer/Surety may not have known the complete substance of the ISIF agreement, there is no question it knew ISIF had settled with Deon and therefore knew ISIF had accepted some level of liability to Deon. Despite this knowledge, either intentionally or by oversight, Employer/Surety chose not to raise estoppel theories as a defense to Deon's claim. In *Heitz*, we held that a party is bound by the theory upon which it tries its case. We cannot speak to the reasons Employer/Surety failed to assert estoppel, but just as in *Sales* and *Heitz*, Employer/Surety is held to that choice. The Commission cannot raise the defense of collateral estoppel for Employer/Surety even if it felt Employer/Surety would have prevailed had it chosen to raise the issue. Our system works best when the parties devise their own litigation strategies.

In its Decision, the Commission found Deon had "proven she suffers whole person permanent impairments of 17%, including 4% whole person impairment due to her 2008 industrial accident." It also found that Deon is totally and permanently disabled under the odd-lot doctrine. This determination of odd-lot status, with a disability rating in excess of impairment, would normally result in a *Carey* apportionment between the Employer/Surety and the ISIF if the odd-lot TPD was caused by the combination of a present injury and pre-existing conditions. However, the Commission found that *Carey* apportionment "is not appropriate" because, after considering all the evidence before the Commission, it concluded "[t]he record does not establish that Claimant's pre-existing leg condition combined with her 2008 industrial accident to render her totally and permanently disabled. Rather, Claimant's right upper extremity condition [(her hand/wrist injury)] alone renders her totally and permanently disabled." The Commission's

9

revised findings in the Order on Reconsideration are completely counter to these findings that were made based upon litigation on the merits. The revised findings are hinged solely on the Commission's erroneous view of the law, are without any support in the hearing record, and the Order on Reconsideration must therefore be reversed. Because the Commission did, in fact, hear Deon's claim against Employer/Surety on the merits and determined Employer/Surety was 100% liable, Deon is entitled to 100% of her benefits from Employer/Surety.[5]

## C.   Deon is not entitled to attorney fees on appeal.

Deon argues that she is entitled to attorney fees on appeal because, she claims, the Employer/Surety raises the same arguments regarding collateral estoppel as the Court rejected in *Vawter*. Idaho Code section 72-804 allows the award of attorney fees to an employee if the Commission or any court finds the Employer/Surety contested an injured employee's claim for compensation "without reasonable ground."

In this case, it was Deon who brought the appeal. The Employer/Surety simply requests that this Court uphold the Commission's decision below. Given that the Commission found in favor of the Employer/Surety's current position, it is reasonable for the Employer/Surety to continue to support that position and contest Deon's claims for compensation. Therefore, attorney fees are not appropriate in this case.

## IV.
## CONCLUSION

We reverse the Commission's Order on Reconsideration. We remand the case to the Commission with instructions to reinstate the Findings of Fact, Conclusions of Law and Order dated May 3, 2013. Costs to Deon, but no attorney fees.

Chief Justice BURDICK, and Justices EISMANN and HORTON, and Justice Pro Tem WALTERS CONCUR.

---

[5] The Court is mindful that Deon will receive somewhat of a windfall as a result of our decision. However, that is not primarily due to her actions. Employer/Surety made it possible by essentially waiving defenses it could have properly asserted at the hearing. The Commission was certainly aware of that fact but its solution was to place the consequences entirely upon Deon and deprive her of the measure of benefits to which she should have been entitled for her TPD. The Commission may have further contributed by approving Deon's settlement with ISIF, without making the findings required by Idaho Code section 72-404 and *Wernecke*. The worker compensation community should not read more into this decision than is warranted. The Court has merely indicated parties must bring forward meritorious defenses at an appropriate time and that, if they do not do so, the Commission cannot rescue them absent extraordinary circumstances that are not present in this case.