# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45336

JIMMIE HODGE, as Guardian, for and on behalf of PAUL R. WELCH, an incapacitated person,

      Interpleader/Defendant-
      Cross Claimant-Appellant,

v.

KATHY WAGGONER and TERESA VITEK, Co-Personal Representatives of the Estate of BARBARA SUE CHITWOOD, deceased,

      Interpleader/Defendants-
      Cross Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2018 Term

Filed:  July 27, 2018

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Randy J. Stoker, District Judge.

District court grant of summary judgment, <u>affirmed.</u>

Randslaw, PLLC, Twin Falls, for appellant.  Kirk A. Melton argued.

Williams, Meservy & Lothspeich, LLP, Jerome, for respondents.  John B. Lothspeich argued.

---

BURDICK, Chief Justice.

The estate of Paul Robert Welch (Welch) appeals the Twin Falls County district court's grant of summary judgment to the estate of Barbara Sue Chitwood (Chitwood). Chitwood was murdered in August 2015, at which time a dispute arose over ownership of funds Chitwood and Welch held at Farmers Bank in two bank accounts designated as "JOINT - WITH SURVIVORSHIP (and not as tenants in common or community property)[.]" Farmers Bank interpled the funds with the district court and initiated this action to resolve the dispute. Law

1

enforcement's investigation into Chitwood's death led to Welch being charged with murdering Chitwood. Accordingly, in the interpleader action, Chitwood asserted Idaho's slayer statute, Idaho Code section 15-2-803, precluded Welch from taking the funds.

The district court ruled on summary judgment that the funds went to Chitwood, concluding Chitwood's slayer statute defense was dispositive. Welch appeals the district court's ruling concerning the funds. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Welch's wife, Lillian, died in December 2012. Lillian and Welch never divorced, but they separated several years before Lillian died. Indeed, in 2005, Welch began cohabiting with Chitwood, with whom Welch had an intimate relationship. Chitwood and Welch never had a ceremonial marriage, but they cohabited and dated until Chitwood's death in August 2015.

During Lillian and Welch's marriage, they maintained a joint checking account at Farmers Bank. The checking account was designated "JOINT - WITH SURVIVORSHIP (and not as tenants in common)[.]" In July 2012, Welch opened a savings account with Farmers Bank. He designated the savings account as a "pay-on-death" account and identified Chitwood as the beneficiary in the event of Welch's death.

After Lillian's death in December 2012, Welch modified the checking and savings accounts (collectively, the Joint Accounts). He first modified the savings account. Specifically, in January 2013, Welch added Chitwood to the savings account and changed the designation from "pay-on-death" to "JOINT - WITH SURVIVORSHIP (and not as tenants in common or community property)[.]" Six months later, in June 2013, Welch modified the checking account by removing Lillian and adding Chitwood as a joint-account holder. Welch did not otherwise change the checking account, leaving in place the "JOINT - WITH SURVIVORSHIP" designation that had been in place from when Welch held the account with Lillian. Though Chitwood was designated as a joint-account holder, Welch contributed 100% of the Joint Accounts' funds.

Chitwood was murdered on August 21, 2015, at the home where she resided with Welch. Detective Rick Van Vooren investigated the murder. In doing so, Van Vooren interviewed Welch. Welch "initially claimed that two intruders came into the home seeking to rape [Chitwood] and demanded money." Welch, however, "eventually confessed to shooting Chitwood twice in the head with the .22 pistol located in the master bedroom of the residence."

2

Welch then "shot himself in the face with the .22 pistol" and was admitted to the hospital. Welch confirmed that "his statements of intruders was [sic] untrue." Ultimately, based on Welch's confession and "the evidence adduced from [Van Vooren's] investigation, [Van Vooren] concluded that Paul Welch murdered Barbara Sue Chitwood." Thereafter, Welch was indicted for first-degree murder.

Shortly after Chitwood died, her children claimed ownership of the funds in the Joint Accounts—then totaling over $130,000. Farmers Bank placed a hold on the Joint Accounts and initiated this interpleader action to determine ownership of the funds. Chitwood answered the interpleader complaint by alleging, as her first and only affirmative defense, that Welch "is not entitled to the joint accounts' proceeds identified in the Farmers Bank Complaint because of Idaho Code Section 15-2-803[,]" which is Idaho's "slayer statute." Welch, by contrast, answered the interpleader complaint by alleging that the slayer statute did not apply. Neither party requested a jury trial.

Welch first moved for summary judgment in November 2015, arguing he owned 100% of the Joint Accounts and the slayer statute did not cause him to forfeit his property. The district court disagreed, concluding that triable questions of fact surrounded whether the slayer statute precluded Welch from taking the Joint Accounts.

Welch filed a renewed motion for summary judgment in June 2017. Again, Welch argued he owned 100% of the Joint Accounts and the slayer statute did not cause him to forfeit his property. The district court again disagreed and, this time, granted summary judgment to Chitwood as the non-movant. The district court specifically held that the slayer statute precluded Welch from taking the Joint Accounts and, as such, awarded the Joint Accounts to Chitwood.[1] Welch timely appeals the grant of summary judgment to Chitwood concerning ownership of the Joint Accounts.[2]

## II. STANDARD OF REVIEW

This Court has explained that, when it reviews a summary judgment on appeal,

---

[1] Chitwood and Welch further disputed ownership of two vehicles that had been "titled in the names of Welch 'or' Chitwood at the time of purchase," which issue was joined in the interpleader action. The district court ruled that Welch was entitled to the vehicles since the undisputed material facts showed that he purchased both vehicles with his separate property. This ruling has not been appealed.

[2] Welch died following entry of the district court's judgment below, resulting in the abatement of the state's criminal prosecution against him.

it does so under the same standards employed by the district court. "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R. Civ. P. 56(c).[3] Where the case will be tried without a jury, "the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." This Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record.

*Borley v. Smith*, 149 Idaho 171, 176–77, 233 P.3d 102, 107–08 (2010) (citations omitted).

## III. ANALYSIS

Welch appeals the district court's grant of summary judgment to Chitwood, as the non-moving party, concerning the Joint Accounts. "This Court has determined '[s]ummary judgment may be rendered for any party, not just the moving party, on any or all the causes of action involved, under the rule of civil procedure,' thus allowing trial courts flexibility in determining the form of relief granted in summary judgment orders." *Harwood v. Talbert*, 136 Idaho 672, 677, 39 P.3d 612, 617 (2001) (citations omitted). "The party against whom the judgment will be entered must be given adequate advance notice and an opportunity to demonstrate why summary judgment should not be entered."[4] *Id.* at 678, 39 P.3d at 618 (quoting *Idaho Endowment Fund Inv. Bd. v. Crane*, 135 Idaho 667, 671, 23 P.3d 129, 133 (2001)). "In instances where summary judgment is granted to the non-moving party, this Court liberally construes the record in favor of the party against whom summary judgment was entered." *Id.* at 677–78, 39 P.3d at 617–18.

Welch asserts the district court erred in two primary ways: (1) by finding that Welch was a "slayer" under the slayer statute; and (2) by erroneously applying the slayer statute.

---

[3] Effective July 1, 2016, Idaho Rule of Civil Procedure 56 was amended. The relevant portion of the rule now provides: "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

[4] Welch has made no argument that the district court failed to provide such notice and opportunity before granting summary judgment to Chitwood. *See, e.g.*, *Gallagher v. State*, 141 Idaho 665, 669, 115 P.3d 756, 760 (2005) (explaining that issues not raised in the opening brief are waived); *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 187, 75 P.3d 743, 748 (2003) ("When a party fails to support an issue with authority or argument, this Court will not consider it.").

4

1.     Did the district court correctly find that Welch was a "slayer"?

Idaho's slayer statute, enacted by the Idaho Legislature in 1971 as part of Idaho's adoption of the Uniform Probate Code, provides that "[n]o slayer shall in any way acquire any property or receive any benefit as a result of the death of the decedent[.]" I.C. § 15-2-803(b); *see also* S.B. 1050, S.L. 1971, ch. 111, § 1.[5] As the Legislature further instructed, the slayer statute "shall be construed broadly in order to effect the policy of this state that no person shall be allowed to profit by his own wrong, wherever committed[,]" though it "shall not be considered penal in nature[.]" I.C. § 15-2-803(n); *accord United Inv'rs Life Ins. Co. v. Severson*, 143 Idaho 628, 633, 151 P.3d 824, 829 (2007) ("The plain language of these subsections reveals the legislative intent that no slayer be allowed to acquire any property or receive any benefit as a result of the willful and unlawful killing of the decedent."); Restatement (First) of Restitution § 187 cmt. a (1937).

The threshold question here is whether Welch is a "slayer." As the district court properly acknowledged, "the very first question the Court must address is whether Welch is a slayer." "Slayer" means "any person who participates, either as principal or as an accessory before the fact, in the wilful and unlawful killing of any other person." I.C. § 15-2-803(a)(1). Interpreting the slayer statute presents a question of law over which this Court exercises free review. *See Hayes v. City of Plummer*, 159 Idaho 168, 170, 357 P.3d 1276, 1278 (2015). When interpreting a statute,

> [t]he statute is viewed as a whole, and the analysis begins with the language of the statute, which is given its plain, usual and ordinary meaning. In determining the ordinary meaning of the statute, effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant. However, if the language of the statute is capable of more than one reasonable construction it is ambiguous, and a statute that is ambiguous must be construed with legislative intent in mind, which is ascertained by examining not only the literal words of the statute, but the reasonableness of the proposed interpretations, the policy behind the statute, and its legislative history.

*Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 561–62, 261 P.3d 829, 838–39 (2011) (quoting *BHC Intermountain Hosp., Inc. v. Ada Cnty.*, 150 Idaho 93, 95, 244 P.3d 237, 239 (2010)).

---

[5] By enacting the slayer statute, the Legislature superseded *Anstine v. Hawkins*, 92 Idaho 561, 563, 447 P.2d 677, 679 (1968), in which "this Court held that a wife who had been convicted of voluntary manslaughter of her husband was entitled to inherit her husband's intestate estate because our statutes of descent and distribution did not at that time provide for exclusion of such an heir." *In re Eliasen's Estate*, 105 Idaho 234, 241, 668 P.2d 110, 117 (1983) (citing *Anstine*, 92 Idaho at 563, 447 P.2d at 679).

Under the plain terms of the statute, the slayer must participate in the "wilful and unlawful killing of any other person." I.C. § 15-2-803(a)(1). A criminal homicide conviction is admissible to establish slayer status. *See id.* § 15-2-803(m); *In re Eliasen's Estate*, 105 Idaho 234, 242, 668 P.2d 110, 118 (1983). A conviction, however, "is not a mandatory prerequisite to application of the slayer's statute." *In re Eliasen's Estate*, 105 Idaho at 242, 668 P.2d at 118. Indeed, "a person may not even be tried but nevertheless may still be shown in a civil action to have been a willful slayer. Proof in a civil case need only be by a preponderance of the evidence." *Id.* As a result, when a slayer-status finding is appealed, it will only be set aside if we conclude it is clearly erroneous. *See, e.g.*, *Visser v. Auto Alley, LLC*, 162 Idaho 1, 3, 393 P.3d 1027, 1029 (2017) ("A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." (quoting *Pinnacle Eng'rs, Inc. v. Heron Brook, LLC*, 139 Idaho 756, 758, 86 P.3d 470, 472 (2004))).

In this case, the district court correctly found Welch was a slayer by a preponderance of the evidence. Neither party invoked their right to a jury trial, and so the district court "as the trier of fact [wa]s entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *P.O. Ventures, Inc. v. Loucks Family Irrevocable Tr.*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). Chitwood supplied the district court with the affidavit of Detective Rick Van Vooren,[6] who investigated Chitwood's murder. Van Vooren testified that Welch "confessed to shooting Chitwood twice in the head with the .22 pistol located in the master bedroom of the residence." Welch "initially claimed that two intruders came into the home seeking to rape [Chitwood] and demanded money." But after confessing to shooting Chitwood, he "admitted that his statements of intruders was [sic] untrue." No argument or evidence to dispute the affidavit containing Welch's confession was proffered below, nor is it proffered on appeal. Van Vooren's uncontradicted affidavit is sufficient to show that Welch participated in "willful and unlawful killing of [Chitwood]" by a preponderance of the evidence. *See* I.C. § 15-2-803(a)(1).

To dispute this finding on appeal, Welch does not contest factual accuracy by arguing the finding is clearly erroneous. *See, e.g.*, *Visser*, 162 Idaho at 3, 393 P.3d at 1029 (quoting *Pinnacle*

---

[6] Welch moved to strike Van Vooren's affidavit, citing relevance and prejudice (but not veracity), and the district court denied the motion, explaining that "[a]pplication of the slayer statute is squarely before the Court, and the Court cannot determine whether it applies without first determining whether Welch is a slayer. Therefore, the evidence regarding the investigation and Welch's confession is highly relevant." Welch has not disputed the admission of Van Vooren's affidavit on appeal.

*Eng'rs*, 139 Idaho at 758, 86 P.3d at 472). Welch instead contests the propriety of making this finding at the summary judgment stage when, according to Welch, the issue was not "raised for decision in a summary judgment motion." Welch is correct that, in *Harwood*, this Court explained that "a district court may not decide an issue not raised in the moving party's motion for summary judgment." 136 Idaho at 678, 39 P.3d at 618. Yet, Welch overlooks that he, the summary judgment movant, did in fact raise the slayer statute in both of his summary judgment motions. In the first motion, Welch informed the district court that "[a]ll that remains for the Court to decide is whether, as a matter of law, the slayer statute applies to the [Joint] Accounts as [Chitwood] alleges." He then segued into his substantive argument, which was denoted by a heading stating: "The Slayer Statute does not apply to the Accounts." Likewise, in the renewed motion, Welch reiterated that the district court needed to decide whether "the slayer statute operates to take Welch's property and give it to Chitwood." He then offset this argument with a heading stating: "Slayer Statute does not take Welch's money and give it to Chitwood."

A plain reading of the slayer statute makes it unequivocally clear that the slayer-status question is the statute's threshold requirement. I.C. § 15-2-803. In other words, the slayer statute does not apply unless a "slayer" is found. *Id.* Welch acknowledged this in both summary judgment motions. As Welch wrote, "[t]o simplify the statute and parties, and assuming for the purposes of argument only that [Chitwood] can prove Welch qualifies as a 'slayer' under the statute . . . ." He similarly wrote, "assuming, for purposes of argument only, . . . that [Chitwood] can . . . establish that Welch willfully and unlawfully killed [Chitwood] . . . ." To be sure, Welch offered that assumption for "argument purposes only" and stressed that it "cannot be interpreted as an admission." But it clearly shows that Welch had notice that the threshold "slayer" requirement was at issue.[7]

Welch further argues he was given no opportunity to dispute whether he was a slayer. This is incorrect. Chitwood filed Van Vooren's affidavit with the district court on July 10, 2017, the same day Chitwood filed her response to Welch's renewed summary judgment motion. Welch filed a reply motion and memorandum on July 17, 2017, but he did not contest the veracity of Van Vooren's testimony or submit any controverting evidence. He only moved to strike Van Vooren's affidavit, contending it was "irrelevant and was submitted for the sole

---

[7] In fact, we note that the slayer statute was already asserted and pled as a dispositive issue by the time Welch moved for summary judgment, as it was conspicuously raised in Chitwood's pretrial demand letter and answer. *See infra* Part III(2).

7

purpose to influence the Court to view one of the claimants negatively." Again, he did not contest the veracity of Van Vooren's testimony. At the hearing on Welch's renewed summary judgment motion, the district court had the following exchange with Welch's counsel:

> THE COURT: . . . . And so you want simply a ruling from me that [the fact Welch contributed all funds to the Joint Accounts] ends this case? Not talk about the Slayer statute?
> [WELCH'S COUNSEL]: Yes, Your Honor.
> THE COURT: Why would I want to do that? That's the whole defense in this case.
> . . . .
> THE COURT: . . . . Don't we have to get into this whole issue of the application of the Slayer statute to resolve this motion? If all you're asking me to rule today is, gee, did Mr. Welch make all the contributions in his accounts? Yeah. Undisputed. So we're done. But that doesn't solve this case because [Chitwood's counsel] in his briefing has clearly raised the Slayer statute as a defense in this case. Ultimately I have to decide that issue, don't I?
> [WELCH'S COUNSEL]: What part of the Slayer statute?
> THE COURT: Any part of it.

Moreover, as Chitwood argued at the hearing, "[b]ut what's clear from the affidavit of Van Vooren is that Mr. Welch did murder Ms. Chitwood . . . . The murder is relevant per the application of the Slayer statute." Welch nevertheless did not offer any controverting argument or evidence. Nor has he argued the district court's factual finding was clearly erroneous.

In sum, because Welch's confession "to shooting Chitwood twice in the head" is undisputed, the district court correctly concluded a preponderance of the evidence showed that Welch participated "in the wilful and unlawful killing of [Chitwood,]" I.C. section 15-2-803(a)(1), making him a slayer. We decline to disturb the district court's slayer finding.

    2.    <u>Did the district court properly apply the slayer statute?</u>

Welch's arguments concerning the district court's application of the slayer statute implicate both raising and construing the slayer statute. As to raising the slayer statute, Welch makes several representations that the district court raised the slayer statute *sua sponte*. Welch is correct that courts generally may not *sua sponte* raise legal theories the parties have not asserted. *Deon v. H & J, Inc.*, 157 Idaho 665, 669–71, 339 P.3d 550, 554–56 (2014). However, the district court in this case did not raise the slayer statute *sua sponte*.

Chitwood very clearly pled the slayer statute in her answer. Paragraph four of Chitwood's answer conspicuously set forth as the "**FIRST AFFIRMATIVE DEFENSE**" that: "[Welch] is not entitled to the joint accounts' proceeds identified in the Farmers Bank Complaint because of

8

Idaho Code section 15-2-803." Chitwood then properly supported this defense at summary judgment by proffering Van Vooren's affidavit. *See Chandler v. Hayden*, 147 Idaho 765, 771, 215 P.3d 485, 491 (2009) ("[A] nonmoving defendant has the burden of supporting a claimed affirmative defense on a motion for summary judgment."). The slayer-statute defense was also asserted in Chitwood's pretrial demand letter sent to Farmers Bank. Welch nevertheless isolates Idaho Code sections 15-2-803(c) and 15-2-803(h)—the provisions the district court found dispositive—and asserts they should not have been addressed since Chitwood "faile[d] to plead subsections (c) or [(h)[8]] of the Slayer Statute . . . ."

Welch's assertion is flawed in three fatal ways. First, Chitwood clearly and conspicuously pled the slayer statute in its entirety in her answer. Second, Welch placed the entire slayer statute at issue in his summary judgment motions. Citing "I.C. 15-2-803(a) through (n)[,]" Welch posited that "[n]one of the provisions . . . require the slayer to forfeit his rights in his own property." Similarly, at the first summary judgment hearing, Welch's counsel acceded:

> I think the most important issue today is that the Court look at the basic premise of the Slayer statute, the foundation upon which it is established and applied. And right at the outset, if we have to read *the whole thing*, we have to read it in context, it says, no slayer shall in any way acquire any property or receive any benefit as a result of the death of the decedent, but such property shall pass as provided by in the sections following.

(emphasis added). At the second summary judgment hearing, the district court stated "[a]ny part of [the slayer statute]" was at issue.

Third, Chitwood was not required to plead the slayer-statute defense with a high degree of particularity. Idaho Rule of Civil Procedure 12(b) mandates that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third party claim, must be asserted in the responsive pleading if one is required." When a defense is so asserted, it must be "in short and plain terms" and affirmative defenses must be "affirmatively state[d.]" I.R.C.P. 8(b)(1)(A), 8(c). Pleadings must be "[c]oncise and [d]irect[,]" and allegations likewise "must be simple, concise, and direct. No technical form is required." *Id.* 8(d)(1); *accord id.* 8(e) ("Pleadings must be construed so as to do justice."). These rules comport with Idaho's notice-pleading requirement, which inquires whether a pleading suffices to put the adverse party "on notice of the claims brought against it." *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229

---

[8] Welch incorrectly identifies subsection (g) in his opening brief. The district court's ruling was under subsection (h), not (g).

P.3d 1164, 1169 (2010) (quoting *Gibson v. Ada Cnty. Sheriff's Dep't*, 139 Idaho 5, 9, 72 P.3d 845, 849 (2003)). Notice pleading does not mandate that a pleading particularly "identify the statutory basis for relief"; rather, it mandates that the pleading provide "*some* indication" of the basis for relief. *Id.*

Chitwood affirmatively pled the slayer statute in her answer using short and plain terms, thus placing Welch on notice that Chitwood was relying on the slayer statute. Welch clearly was on notice that the slayer statute was at issue, given that Welch raised its purported inapplicability when moving for summary judgment. As such, we reject Welch's argument concerning the district court's purported *sua sponte* raising of the slayer statute.

With respect to the district court's construction of the slayer statute, Welch asserts it was erroneous. Welch directs this Court's focus to subsections (c) and (h), which the district court found dispositive. We begin with subsection (c), which provides:

> The slayer shall be deemed to have predeceased the decedent as to property which would [(1)] have passed from the decedent or his estate to the slayer under the statutes of descent and distribution or [(2)] have been acquired [(a)] by statutory right as surviving spouse or [(b)] under any agreement made with the decedent.

I.C. § 15-2-803(c).

Under subsection (c), Welch is deemed to have predeceased Chitwood as to "property which would . . . have been acquired . . . under any agreement with [Chitwood]." "Property" is broadly defined as "*any* real and personal property and *any* right or interest therein." I.C. § 15-2-803(a)(3) (emphases added). The parties do not dispute that the Joint Accounts fall under this definition of "property."[9] Nor do the parties in this case contest the veracity of the district court's conclusion, or the facts supporting it, that the Joint Accounts validly created attendant rights of survivorship. *See, e.g.*, *United Inv'rs Life Ins. Co. v. Severson*, 143 Idaho 628, 634, 151 P.3d 824, 830 (2007) ("This Court will not consider any issue when a party fails to support it with argument or authority."). As Welch even conceded below, "designating a 'right of survivorship' was to take care of Chitwood after [Welch] passed away." Welch's counsel further conceded at the first summary judgment hearing that "[i]t is undisputed that the document -- yes, that is

---

[9] Although Welch's counsel, in passing, made conclusory statements apparently to the contrary at oral argument, this argument was not raised below. *See, e.g.*, *Obenchain v. McAlvain Const., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006) ("[A]ppellate courts will not consider new arguments raised for the first time on appeal."). Nor was it raised in Welch's opening brief. *Gallagher v. State*, 141 Idaho 665, 669, 115 P.3d 756, 760 (2005) (explaining that issues not raised in the opening brief are waived).

undisputed. The document from the bank identifies it as a [sic] account with joint survivorship. We cannot argue that."

The plain terms of subsection (c) preclude Welch from taking the Joint Accounts. Subsection (c) applies to "property which would . . . have been acquired . . . under any agreement made with [Chitwood]." I.C. § 15-2-803(c). Had Welch not killed Chitwood and lawfully survived her, the Joint Accounts would "have been acquired" by Welch "under [the right of survivorship] agreement made with [Chitwood]." *Id.* But since Welch is a slayer, Welch is deemed to have predeceased Chitwood and cannot acquire the Joint Accounts. *Id.*

Welch challenges subsection (c)'s applicability by asserting he did not stand to "acquire" any property, as it is undisputed he contributed (and therefore owned) 100% of the Joint Accounts' funds. Welch is correct that "[a] joint account belongs, *during the lifetime of all parties*, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." I.C. § 15-6-103 (emphasis added). Accordingly, 100% of the funds presumptively belonged to Welch "during the lifetime of [Chitwood and Welch.]" *See id.* But the issue here does not concern ownership of the funds during the lifetime of Chitwood and Welch. Rather, the issue concerns ownership of the funds upon the first to die of Chitwood or Welch. This issue is resolved by looking to the Joint Accounts' designations, which provide "JOINT - WITH SURVIVORSHIP (and not as tenants in common or community property)[.]" Under Idaho Code section 15-6-104(a), "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent if an intent to give the account can be shown by the surviving party or parties." The district court found Welch had such intent, and the parties have not challenged that finding on appeal. Thus, upon the first to die of Chitwood or Welch, the survivor would own the Joint Accounts. I.C. § 15-6-104(a); *see also* 9 C.J.S. *Banks and Banking* § 292 (2018).

Welch's "acquire" argument is further flawed because it conflates contingent future interests with vested future interests. According to Welch, he had a "vested interest" in the Joint Accounts. Welch is incorrect. "A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property upon the ceasing of the immediate or precedent interest." I.C. § 55-105. "A future interest is contingent whilst the person in whom, or the event upon which, it is limited to take effect

11

remains uncertain." *Id.* § 55-106. Welch's future interest was not vested. Instead, Welch had a contingent future interest in the Joint Accounts, the contingency being that Welch must lawfully survive Chitwood. *See id.*

Therefore, Welch did stand to acquire property had Welch not killed Chitwood and lawfully survived her—his right of survivorship would have vested giving him the Joint Accounts. Until that interest vested, Welch was just a joint life tenant holding a contingent interest. In other words, until Welch's interest vested, he had only an expectancy "subject to be defeated[.]" *Wilson v. Linder*, 18 Idaho 438, 443–48, 110 P. 274, 275–77 (1910) ("It is therefore clear to us that the plaintiffs have a contingent remainder in this estate which may be defeated upon the happening of the contingency named in the will, which was intended by the testator to vest the absolute fee to the estate."). But since Welch is a slayer, he "shall be deemed to have predeceased [Chitwood,]" meaning that his contingent remainder failed to vest. *See* I.C. § 15-2-803(c). Were Welch allowed to effect vesting of his future interest by killing Chitwood, Welch "would profit by the killing . . . . This does not comport with the legislature's intent as expressed in I.C. § 15-2-803(n). Nor is it in line with the I.C. § 15-2-803(b) prohibition that a slayer not acquire any property or receive any benefit as a result of the death of the decedent." *Severson*, 143 Idaho at 633, 151 P.3d at 829 (concluding slayer had no claim to life insurance proceeds, as the claim ripened by virtue of slayer's murder of the decedent).

Our conclusion that subsection (c) operates in this way does not penalize Welch, *see* I.C. section 15-2-803(n) (commanding that the slayer statute "shall not be considered penal in nature"), as it does not cause Welch to forfeit any property to which Chitwood is unentitled, including the two vehicles the district awarded to Welch. Because subsection (c) is dispositive, we decline to address subsection (h) and affirm the summary judgment granted to Chitwood.

## IV. CONCLUSION

We affirm the grant of summary judgment awarding Chitwood the Joint Accounts. Costs to Chitwood.

Justices HORTON, BEVAN and SCHROEDER, Pro Tem, **CONCUR.**

KIDWELL, J. pro tem, dissenting.

This matter was premature for summary judgment. I would remand for further factual determinations.